**Eddie R. WALKER, Plaintiff-Appellant,**

v.

**F. David MATHEWS, Secretary of Health, Education and Welfare, Defendant-Appellee.**

**No. 75–3502.**

United States Court of Appeals, Ninth Circuit.

Nov. 16, 1976.

Lee A. Holley (argued), Seattle, Wash., for plaintiff-appellant.

Charles F. Mansfield, Asst. U. S. Atty. (argued), Seattle, Wash., for defendant-appellee.

Before SMITH * and HUFSTEDLER, Circuit Judges, and WOLLENBERG,** District Judge.

HUFSTEDLER, Circuit Judge:

The appellant, Eddie R. Walker, appeals from a determination by the Administrative Law Judge, affirmed by the district court, that he is not entitled to disability benefits under the Social Security Act. (42 U.S.C. §§ 416, 423 (1974).) We are faced at the outset with a challenge to the scope of our appellate review.

I

 As is common in actions requesting review of the denial of disability benefits, the parties filed cross motions for summary judgment based upon their interpretations of the administrative record. The district court granted the Government's motion and judgment was entered against appellant on September 3, 1974. Appellant filed a motion for reconsideration on September 10, 1974, and this motion was denied, "although reluctantly," on September 23, 1974. Appellant then filed a timely notice of appeal on September 26, 1974.[1] On that date, appellant also paid the $5.00 fee required by 28 U.S.C. § 1917. Also on that date, appellant requested permission to appeal *in forma pauperis.* This request was denied on October 4, 1974.[2]

At that point, the case fell into a somnolent state for almost one year. Appellant made no effort to request this court for permission to proceed *in forma pauperis*

and did not carry out his responsibility to ensure the preparation of the record on appeal. Appellee made no request to have the appeal dismissed. In April of 1975, appellant tried to file a "motion for remand" with this court, but upon discovering that the appeal had not been processed, filed the same motion in the district court on April 15, 1975. No response to this motion was filed and the district court never acted upon it.

Eventually, on September 22, 1975, appellant filed a Rule 60(b) motion for relief from the final judgment against him. The Secretary filed an opposition, and appellant's motion was denied by order dated October 15, 1975. On October 24, 1975, appellant filed a notice of appeal from this order. In this notice, appellant stated that the appeal was "to be consolidated with the previous Notice of Appeal." This time, all necessary steps to prosecute the appeal were taken and the entire record of the proceedings below, including the administrative record considered by the district court, has been transmitted to this court.

 The Secretary claims that on this appeal appellant cannot obtain a review of the judgment against him entered in September of 1974 because of appellant's failure to observe the time limits set out in Rules 10, 11, and 12 of the Federal Rules of Appellate Procedure. The Secretary has not, however, ever formally moved to dismiss the appeal. Had he done so prior to the docketing of the appeal, Rule 12(c) of

---

* Honorable J. Joseph Smith, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

** Honorable Albert C. Wollenberg, Senior United States District Judge, Northern District of California, sitting by designation.

1. The notice of appeal stated that Walker was appealing from the final judgment against him and from the order denying his motion for reconsideration. The motion for reconsideration raised no new facts or arguments, and the order denying the motion affirmed the previous order granting the Secretary's summary judgment motion and ordering entry of judgment against Walker. The notice of appeal was filed within 30 days of the date judgment was en-

tered. In this situation, the appeal from the order denying the motion for reconsideration is surplusage and, since it is an appeal from a normally nonappealable order, it will be dismissed. (Cf. *Maryland Tuna Corporation v. MS Benares* (2d Cir. 1970) 429 F.2d 307, 316–318.)

2. Walker's attempt to appeal from this order must be dismissed as untimely. When a district court denies a motion for leave to proceed on appeal *in forma pauperis,* the moving party must then file a similar motion with the Court of Appeals within 30 days after service of notice of the district court's action. (*See,* Fed.R. App.Proc., Rule 24(a).)

the Federal Rules of Appellate Procedure would have provided a method whereby this court could have reviewed the matter. The Secretary should have been reminded by both the "motion for remand" filed in April of 1975 and the motion for relief under Rule 60(b) filed in September of 1975 that the appeal was not being diligently prosecuted. Bringing the matter to this court's attention for the first time in a brief filed two months after the appeal was finally docketed cannot be considered a proper motion for dismissal of the appeal.[3]

■ Appeal from the denial of a Rule 60(b) motion brings up for review only the matters pertinent to that motion. It does not bring up the judgment for review, and it cannot be used to correct a failure to timely appeal from that judgment. (*Hines v. Seaboard Air Line Railroad Company* (2d Cir. 1965) 341 F.2d 229; 7 Moore's Federal Practice ¶ 60.30[3] (2d ed. 1975).) In this case, however, notice of appeal from the underlying judgment was timely filed. That appeal is still alive and was brought here, although belatedly, in conjunction with, and not as an appendage to, the appeal on the Rule 60(b) motion. Accordingly, we reach the merits of the appeal from the underlying judgment.[4]

## II

■ The issue before us is whether the Administrative Law Judge's finding that the appellant, Eddie R. Walker, is not disabled is supported by substantial evidence.[5] Substantial evidence means that a finding is supported by " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " (*Richardson v. Perales* (1971) 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842.) In applying the substantial evidence test we are obligated to look at the record as a whole [6] and not merely at the evidence tending to support a finding.

■ Disability, as that word is used in the Social Security Act,[7] is a term of art. The statute makes any consideration of whether a claimant "would [actually] be hired if he applied for work" legally irrelevant. (*See,* 42 U.S.A. § 423(d)(2)(A); 20 C.F.R. § 404.1502(b) (1975).) What is relevant to the determination of disability under the Act is whether an individual's physi-

---

3. In any event, considering the Secretary's brief as a motion to dismiss the appeal from the judgment, we deny the motion. While appellant has not proceeded diligently, the Secretary has not shown any prejudice stemming from the delay. Appellant had finally docketed the appeal before the Secretary's brief was filed. Under these circumstances, the interests of justice would be better served by proceeding to hear the appeal. Not every appeal which fails to comply with the time requirements breached by appellant herein must be dismissed. (*See King v. Laborers International Union of North America, Union Local No. 818* (6th Cir. 1971) 443 F.2d 273, 276.)

4. Because we reach the merits in reversing the *decision of the lower court, it is not necessary* to consider appellant's contention that he did not receive a fair hearing before the Administrative Law Judge. Similarly, we do not address the argument that reversal is required because Walker was not permitted to present oral argument before summary judgment was entered against him.

5. 42 U.S.C. § 405(g) (1974) provides: " . . . The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."

6. *See, Day v. Weinberger* (9th Cir. 1975) 522 F.2d 1154, 1156 ("But in determining whether there is substantial evidence to support the examiner's finding a reviewing court must consider both evidence that supports, and evidence that detracts from, the examiner's conclusion. We cannot affirm the examiner's conclusion simply by isolating a specific quantum of supporting evidence."); Davis, 4 Administrative Law Treatise § 29.03 (1958) (" ' . . . Evidence which may be logically substantial in isolation may be deprived of much of its character or its claim to credibility when considered with other evidence.' "); and *Universal Camera Corp. v. N.L.R.B.* (1951) 340 U.S. 474, 487–88, 71 S.Ct. 456, 95 L.Ed. 456.

7. 42 U.S.C. § 423(d)(1)(A) (1974) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"

cal or mental impairment is of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." (Section 423(d)(2)(A). *See*, 20 C.F.R. § 404.1502(b) (1975).) In looking toward the pool of jobs existing in the national economy, Congress did not intend to foreclose a claimant from disability benefits on the basis of the existence of a few isolated jobs. Indeed, the Conference Report accompanying the 1967 Amendments notes that the final sentence in Section 423(d)(2)(A)[8] was added "to preclude from the disability determination consideration of a type or types of jobs that exist in very limited number or in relatively few geographic locations in order to assure that an individual is not denied benefits on the basis of the presence in the economy of isolated jobs he could do." (1967 United States Code Congressional and Administrative News, pp. 3197–98 (1967). *See also*, 20 C.F.R. § 404.1502(b) (1975); *Thomas v. Richardson* (S.D.N.Y.1974) 371 F.Supp. 362.)

To be sure, the Administrative Law Judge did not confine himself to the existence of jobs for Eddie Walker in the Puget Sound area. But his finding that the claimant is able to engage in substantial gainful employment is based on the theoretical existence of merely a few isolated jobs. There is no disagreement that Eddie Walker's condition prevents him from returning to his job as a stevedore. Walker's back

injury now disables him from the bending, stooping, reaching, and lifting of heavy objects that are required by stevedoring. The Administrative Judge, however, found that a "host of jobs" is available to Walker; *e.g.*, airplane riveter, shipping clerk, machine packager, electronic tube assembler, printed circuit assembler, or lunch truck driver.

Walker had been an airplane riveter for three years prior to stevedoring. The evidence before the Administrative Law Judge clearly indicates that Walker is no longer able to engage in such employment. Nonetheless, the Administrative Law Judge found to the contrary. His findings as to Walker's other means of employment are equally unsupported by substantial evidence. The vocational expert testified that being a shipping (or traffic) clerk requires a "business and clerical sense," so that Walker would need retraining to handle these jobs. Yet Walker has been unable to participate in any retraining programs because of the lack of funding for these programs. Electronic tube assembling requires substantial periods of standing and sitting as well as the lifting of twenty-pound weights. These activities are too painful for a man with Mr. Walker's injury. Nor is Walker qualified to be a printed circuit assembler. The vocational expert observed that these jobs require a sense of color coordination, which Walker does not have, and entail too much walking, sitting and reaching. Lunch truck driving is equally unattainable for Walker as such employment requires that he be bonded and that he be able to lift heavy objects.[9]

8. "For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

9. The vocational expert also rejected other job possibilities raised by the Administrative Law Judge during the course of the hearing. For example, the claimant cannot be a hand packager because that job requires too much bending, stooping, lifting and twisting. Employment as a production machine operator was rejected for similar reasons. Nor does Walker have the finger dexterity to become a small parts assembler. The vocational expert offered

the following evaluation of Walker's employment potential: "Given past experience of very hard work and heavy labor kind of thing—without any special training or extensive education, I would say that the claimant's employment possibilities would be extremely limited."

The Administrative Law Judge refused to consider the difficulty Walker might have in finding a job due to his age. But the regulations interpreting the Social Security Act provide that age is relevant to whether substantial employment exists: "When used in this section for evaluating 'disability,' the term 'age' refers to chronological age and the extent to which it affects the individual's capacity to engage in work in competition with others. An individual unemployed primarily because of age, how-

■ The vocational expert's testimony reveals only two potential jobs for someone with Walker's incapacities—stencilling and machine packaging. Yet, as noted earlier, the statute does not ground an unfavorable disability determination in the existence of a few scattered jobs. Because of the use of pre-printed cartons, stencilling jobs are very rare. Furthermore, Walker cannot do all machine packaging jobs. Because many of these jobs require long periods of standing, Walker's future in machine packaging is limited to finding one of the few machine packaging jobs that allow him to sit and stand at will. By basing Walker's ineligibility for disability insurance on the existence of scarce stencilling and machine packaging jobs, the Administrative Law Judge clearly violated Congress' intent in defining disability. Since the record provides no other evidence that Walker is able to engage in "substantial gainful work," it cannot support a finding of substantial evidence.

The Administrative Law Judge was equally cavalier in considering the evidence as to the nature of Walker's injury. Walker testified that he suffers from constant back pain which becomes acute whenever he sits, stands, lifts, bends or stretches for any length of time. Sometimes the pain is so great that he is unable to sleep. His appetite, along with his weight, has decreased since his accident and he is unable to participate in sports or to drive for any length of time. He cannot take even the simplest pain killers because they irritate his ulcer.

While it is true that subjective symptoms of pain must be supported by clinical and laboratory diagnostic techniques (see, 20 C.F.R. § 404.1501(c) (1975)), the record is replete with testimony corroborating Walker's pain and inability to sit, stand, lift or walk for any sustained period of time. Three doctors testified at the hearing. Not one said that Walker is a malingerer. Indeed, the doctors testified that there has been a deterioration in Walker's condition, that he is unable to return to his former means of employment, that his symptoms are localized and consistent and that there is "ample positive evidence that Mr. Walker has a painful back"—not an incredible conclusion considering that Walker's injury occurred when he was hit with a 750-pound roll of pulp paper. Nor does the fact that Walker has not responded to two out of three doctor's treatments prove that his pain is imaginary. The incidence of hypochondria would increase indeed if it were measured by the efficacy of medical treatment.

■ It is not within our province to judge the credibility of the witnesses before the Administrative Law Judge. And although "uncontradicted expert opinions on the ultimate issues are not binding on the examiner . . . the examiner must, if he rejects them, expressly state clear and convincing reasons for his doing so." (Day v. Weinberger, supra, at p. 1156.) The medical testimony in the present case stands uncontradicted as to the bona fide nature of the claimant's pain and physical impairment.[10] Nonetheless, the Administrative Law Judge offered no explanation for his rejection of this testimony and his contrary conclusion as to Walker's disability. Such a conclusion cannot withstand the scrutiny of the substantial evidence test.

Walker finds himself in the paradigm "catch-22" situation. On one hand, he is ineligible for unemployment compensation because he "is unavailable for work;" yet on the other hand, he is ineligible for disability insurance because he is able to engage in "substantial gainful work."[11] The

---

ever, shall not be deemed unable to engage in substantial gainful activity by reason of a medical impairment." (20 C.F.R. § 404.1502(d) (1975).)

10. One doctor testified that Walker is 50% disabled and that he is only capable of employment that utilizes the intellect rather than

strength or physical movement. But of course, such employment would require retraining, which retraining has been denied to Walker.

11. Nor is Walker entitled to benefits under the Longshoremen's and Harbor Workers' Compensation Act. This Circuit removed that avenue of relief in Walker v. Rothschild Interna-

Social Security Act created expectations among contributors to the insurance fund that they would be protected in case they became sick or were injured and could no longer work. In reliance on this insurance system, many workers have abstained from private insurance policies or alternate savings plans. To deny Eddie Walker benefits in the present case would indeed be breaking faith with the promise of the Act.[12]

REVERSED AND REMANDED.

*tional Stevedoring Co.* (9th Cir. 1975) 526 F.2d 1137 (Hufstedler, J., dissenting).

12. " . . . The individual worker believes he is protected against catastrophe. To him that means he will receive income-support payments if *he* is sick or hurt and can no longer work. He certainly does not expect that an injury which disables *him* will be found non- compensable (*i.e.*, nonmedical) because most persons would be able to continue working with symptoms that are indistinguishable to the doctors' methods and machines." (Liebman, L. "The Definition of Disability in Social Security and Supplemental Security Income: Drawing the Bounds of Social Welfare Estates," (1976) 89 Har.L.Rev. 833, 846.)