**Audon VIDAL, Jr., Plaintiff–Appellant,**

v.

**Patricia R. HARRIS, Secretary of Health and Human Services, Defendant–Appellee.**

**No. 78–1547.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1980.

Decided Jan. 26, 1981.

James E. White, Fresno, Cal., on brief; Dennis J. Mulshine, San Francisco, Cal., argued for defendant–appellee.

Before CHAMBERS and GOODWIN, Circuit Judges, and ORRICK,* District Judge.

ORRICK, District Judge.

The two major questions raised by appellant, Audon Vidal, Jr., in his appeal from the district court's judgment granting the motion for summary judgment of the Secretary of Health and Human Services [1] (the "Secretary"), denying him disability benefits, and denying his motion for summary judgment are: (1) that the findings of the Secretary that he is not disabled for purposes of receiving benefits is not supported by substantial evidence, and (2) that the case should be remanded for further hearing because he was not represented by counsel and because the administrative law judge did not adequately inform him of his right to an attorney and did not fairly conduct the hearing to protect his interest.

We find that the administrative law judge failed to "scrupulously and conscientiously probe into, inquire of and explore for all relevant facts" in accordance with the very heavy burden we imposed upon him in *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978), when the plaintiff is not represented by counsel, and we, accordingly, reverse and remand the case to the court below to conduct further proceedings not inconsistent with this Opinion.

## I

On October 22, 1975, Vidal applied for supplemental security income benefits based on disability, alleging that he had been unable to work since September, 1975. He had been working as a farm laborer in the fields, the only type of work he had ever performed. He was slower than most workers and had to find employers who would let him work at his own pace. After September, 1975, he was laid off and could not find any other employer who would hire him, letting him perform at his own pace.

Vidal's claim of disability is based chiefly upon the results of having contracted polio, which crippled his left leg, making it shorter than his right leg, thus requiring him to use a long leg brace, knee locks and cages, and a 2½" lift on his shoe. If he stands on his right leg for more than 1½ hours or walks ¼ to ½ mile, it collapses. The medical reports related to inspections of the leg brace, which was in need of repair at the time of the hearing before the administrative law judge. The reports did not otherwise relate to his physical condition. In his application for benefits, he also alleged that his left leg swelled after eight hours work, and his right leg buckled and cramped.

Vidal completed ten grades of school in the "slow" track and had a "C" or "D" average. He quit school in the eleventh grade because he did not like it. Although

---

* Honorable William H. Orrick, United States District Judge for the Northern District of California, sitting by designation.

1. After the formation of the Department of Education, the name of the Department of Health, Education and Welfare was changed to the Department of Health and Human Services and, by oral motion granted at the hearing, the instant case caption was changed to "Secretary of Health and Human Services."

he completed ten grades, he indicated that he cannot read well; he could not read an unidentified document in front of him at the hearing, nor does he read newspapers. He had to have someone read him some of the questions on the written drivers' licensing examination because he could not understand them all. When asked how far he could count, Vidal answered that he could count to 100 but not to 1,000 and could not always determine the right amount of change when grocery shopping. He can only subtract from 100 when using a pencil. Psychometric tests administered to him classified him as borderline mentally retarded, two IQ tests showing scores of 73 and 78. Career training was advised.

A vocational expert, Professor Everett Stude (Ph.D.) of Fresno State University reviewed all the documentary evidence and heard Vidal's testimony. Stude noted that Vidal had worked as a farm laborer from age 12 to 21, mostly raking leaves and chopping cotton, and that Vidal could no longer perform the job of farm laborer. He testified that there were light or sedentary jobs Vidal could perform in the farm labor area without special training. Stude specifically selected two jobs (both classified as "sedentary" in the Department of Labor's Dictionary of Occupational Titles). These jobs were "inspector" and "sorter of agricultural produce." For the job of inspector, Stude testified there were 160 jobs available in the region and named specific companies. For the job of sorter, he estimated approximately 1,000 positions and again named some specific firms. His source of information was vocational surveys and personal observations, within the previous two weeks.

Stude recognized that Vidal is a slow learner and would be foreclosed from many other jobs because of his lack of reading skills, trouble with calculations, and physical problems. He further recognized that a person with average learning ability could learn certain jobs within a period of hours or a day, but that Vidal would take one to three months to learn them. He also testified that Vidal has certain transferable skills not diminished by his impairment, such as manual dexterity, eye–hand coordination, and ability to follow instructions.

Vidal was not represented by counsel at the hearing, although he was told by the administrative law judge that he could have counsel. The administrative law judge found that Vidal could no longer engage in his usual job of field farm laborer. But he also found that Stude, the vocational expert, had specifically identified two sedentary jobs Vidal could perform based on his age, education, work experience, and current impairments; that approximately 1,160 such jobs existed in the Fresno region; and that Vidal had the residual physical capacity to perform sustained sedentary work activity, including the jobs enumerated by Stude, and thus he was not under a disability within the definition of the Social Security Act.

## II

### A

Under 42 U.S.C. §§ 1383(c)(3) and 405(g), the jurisdiction of the court is limited to the question of whether the findings of the Secretary are supported by substantial evidence. *Hall v. Secretary of HEW*, 602 F.2d 1372, 1374 (9th Cir. 1979). Applying this test, the court must uphold the Secretary's determination that appellant is not disabled for the purposes of receiving benefits if the findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1375; *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1977). The court must look at the record as a whole and not merely the evidence tending to support a finding. *Cox v. Califano, supra*, 587 F.2d at 990; *Walker v. Matthews*, 546 F.2d 814, 818 (9th Cir. 1976). The statute, 42 U.S.C. § 423(d)(2)(A), makes legally irrelevant any consideration of whether a claimant would actually be hired if he applied for work. *Walker, supra*, 546 F.2d at 818. The statutory standard is not employability, but rather capacity (*i. e.*, not whether Vidal could actually find a job but whether health limi-

tations would prevent him from engaging in substantial gainful work). *Miranda v. Secretary of HEW*, 514 F.2d 996, 998 (1st Cir. 1975).

■ The record here does not contain sufficient evidence to uphold the administrative law judge's determination of nondisability. It is doubtful that Vidal sustained his burden of showing he could no longer perform his former job; the only testimony received regarding the reasons for his lay-off was from the claimant himself. Notably absent was a physician's report of the nature and extent of Vidal's physical problems and whether such problems would preclude him from continued employment as a farmer laborer. Assuming, as the administrative law judge concluded, that Vidal met his statutory burden that he was unable to perform his former job, substantial evidence is lacking to support the contention of the Secretary that Vidal has the physical and mental capacity to perform the jobs specified by the vocational expert. *Hall, supra.* While testimony by a vocational expert is considered a well-respected method of demonstrating the claimant's ability to engage in other substantial gainful work, *id.* at 1377, *O'Banner v. Secretary of HEW*, 587 F.2d 321 (6th Cir. 1978), the testimony of Professor Stude failed to provide convincing evidence that Vidal was qualified for the positions of inspector or sorter of agricultural produce. Stude stated that the claimant would require considerably more training than a person of average learning ability.[2] The record does not contain any evidence that employers of inspectors and sorters would consider the required training period for Vidal to be reasonable and therefore that he would be qualified to apply for the positions. In *Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975), the court stated:

"It is clear that the claimant need not be a total 'basket case' before the courts find that there is an inability to engage in substantial gainful activity. The question must be looked at in a practical manner, and mere theoretical ability to engage in substantial gainful activity is not a sufficient basis to deny benefits. The test is whether a particular job is *realistically* within the physical and *mental* capabilities of the claimant." (Emphasis added, citations omitted.)

Here, there is insufficient evidence to show that the jobs of inspector and sorter are realistically within the physical and mental capabilities of Vidal. "[T]he emphasis is on the particular claimant's capabilities and on what is reasonably possible, not on what is conceivable * * *." *Yawitz v. Weinberger*, 498 F.2d 956, 959–960 (8th Cir. 1974). In short, the present record does not contain substantial evidence to prove either the claims of Vidal or those of the Secretary.

### B

The second issue on appeal is whether "good cause" nevertheless exists to remand Vidal's case for further hearing because he was not represented by counsel and because the administrative law judge did not adequately inform him of his right to an attorney and did not fairly conduct the hearing to protect Vidal's interests. 42 U.S.C. § 405(g). In *Hall, supra*, 602 F.2d at 1377, the Ninth Circuit stated that "good cause is, significantly, not a difficult standard to meet."

■ However, the absence of counsel alone is not sufficient ground for remand. *Id.* at 1378; *Cox, supra*, 587 F.2d at 991. In *Cox*, the Ninth Circuit stated that when plaintiff is not represented by counsel, the administrative law judge's duty is "to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts," and he must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* at 991. Lack of counsel does not affect the validity of the hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings. *Hall, supra*, 602 F.2d at 1378; *Heisner v. Secretary of HEW*, 538 F.2d 1329, 1331 (8th Cir. 1976); *Sykes v. Finch*, 443 F.2d 192, 194 (7th Cir. 1971).

---

2. "It takes a matter of hours for a person with average learning ability. With him [Vidal] I have the feeling it would take at least one to three months to really learn the job." C.T. 54.

Although Vidal concedes he received written notice of the right to representation at the hearing, there is serious question whether he could have read the form of notice with full understanding. Vidal could not read an unidentified document in front of him at the hearing, C.T. 36, he does not read newspapers, C.T. 37, and he had to have someone read him some of the questions on the written drivers' licensing examination because he could not understand all of them. C.T. 38. Considering the mental retardation of the claimant and his unfamiliarity with the hearing procedure, Vidal's brief answers to the administrative law judge's statements concerning the right to representation [3] leave a serious question whether the right to counsel was knowingly waived at the hearing.

■ But the issue is not whether the right to representation was knowingly waived, rather, it is whether, in the absence of representation, the administrative law judge met the heavy burden imposed by *Cox, supra.* We hold that the burden was not met. The claimant's case was clearly prejudiced by the inadequate examination of the vocational expert. While the questions posed by the administrative law judge were relevant to determine if the claimant had the potential to perform specific jobs, the examination did not adequately probe whether an individual with Vidal's learning disability would be considered eligible to apply for those jobs. It is clear from the record that the claimant was totally incapable of challenging the vocational expert's conclusions of this point.[4] The absence of

3. C.T. 18–19:

"ADMINISTRATIVE LAW JUDGE: Oh, all right. Good enough. And what I would like to do is advise you of your rights under the supplemental security income program. I will also briefly discuss our mutual obligations under the law.

First of all, you realize you have the right to a hearing. Even though the Social Security Administration denied your application two times, you have the right to a new hearing before me, an Administrative Law Judge.

You also have the right to have a representative of your choice here. It isn't required but I stated in my notice of hearing that you have a right to bring a lawyer with you or any representative of your choice. I assume you're here without any representative?

CLAIMANT: Yes.

ADMINISTRATIVE LAW JUDGE: Is it because you do not wish to hire one or have one appointed? If this true?

CLAIMANT: Yes.

ADMINISTRATIVE LAW JUDGE: So you wish to proceed without any other representative?

CLAIMANT: Yes."

4. C.T. 58–59:

"ADMINISTRATIVE LAW JUDGE: Now do you have any questions after hearing all the conversation? Do you understand what we're doing here? My job is to decide from all the evidence the extent and duration of your impairments according to the law which I must follow. I must decide from the evidence whether or not you can do your work as a farm laborer. I must also decide whether or not assuming you have all the physical abilities you have and the fact that you're a slow learner, the question is whether or not you can perform any other kind of job. That is the test. It's not whether or not you have an impairment and whether or not you can't perform the farm laborer [sic]. I need evidence to show that you can't perform any other kinds of jobs. This is the reason for the evidence that I must develop to do my job. Does any question come in your mind? Do you want to make a statement?

CLAIMANT: If there's going to be a job, I'd like to be close to home. I don't want to be way over here.

ADMINISTRATIVE LAW JUDGE: Yes.

CLAIMANT: And that's why–

ADMINISTRATIVE LAW JUDGE: These jobs are in the Salem (phonetic) and Keene Valley area. According to law if these jobs exist anywhere in the, you know, several regions, they don't have to be close to home, in the economy. That's what the law is and I understand what you're telling me. You understand that I have to follow the law and I want you to try to understand that I have to follow the law and I want you to try and understand the law I must follow.

CLAIMANT: I would like to (inaudible). Like I say, I don't got enough education for anything. I hate to go on a job that I don't know how to do anything.

ADMINISTRATIVE LAW JUDGE: Yes.

CLAIMANT: I hate to do that.

ADMINISTRATIVE LAW JUDGE: What do you think of that problem, Dr. Stude?

CLAIMANT: Because, you know, most of the people working under want to (inaudible) or else they pay you off or something. I don't like that.

such substantial evidence casts a cloud of doubt on whether the Secretary has met the burden of proving that Vidal could be qualified, both physically and mentally, to perform the specified jobs. *Hall, supra.* Had the claimant been represented by counsel at the hearing, it is likely that cross–examination of the vocational expert would have revealed this relevant information. Since the claimant was not represented by counsel and the administrative law judge did not "scrupulously and conscientiously probe into, inquire of and explore for all relevant facts," *Cox, supra* 587 F.2d 988, the interests of justice demand that the case be remanded.

Accordingly, we reverse the judgment of the district court and remand the case to the court below to conduct further proceedings not inconsistent with this Opinion.

REVERSED and REMANDED.

CHAMBERS, Circuit Judge, concurring and dissenting:

I concur with the result herein, and agree that *Cox v. Califano,* 587 F.2d 988 (9th Cir. 1978), requires the case be remanded for proceedings with proper inquiry and exploration of all the relevant facts.

A new factual record will be developed upon remand. The conclusions of the administrative law judge will be measured against the new record. For this reason, I would not reach the question of "substantial evidence" from the administrative law judge's conclusions below.

ADMINISTRATIVE LAW JUDGE: That's a serious complaint, isn't it?

DR. STUDE: I didn't quite understand it.

ADMINISTRATIVE LAW JUDGE: He's saying that if you don't do the job right, the foremen get on you and you don't have that job."