Gerald D. THOMPSON, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

Civ. No. 81–983–RE.

United States District Court, D. Oregon.

July 26, 1982.

Robert K. Udziella Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, Or., for plaintiff.

Charles H. Turner, U.S. Atty., Laury H. Hennings, Asst. U.S. Atty., Portland, Or., for defendant.

OPINION

REDDEN, District Judge:

Gerald D. Thompson brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Secretary denying Thompson's claim for disability insurance benefits.

Thompson is a 49-year-old man who suffers from severe headaches and mental depression. At least in part these problems appear to stem from an on-the-job injury on April 12, 1978. On that date, Thompson, who was employed as a cleaner of tanks used for industrial chemicals, was cleaning a tank which had been used to hold "Solution 32," an agricultural fertilizer. An industrial solvent is used to clean the tanks. When Thompson looked down into the tank to see if it was clean, he was overcome by the mingled fumes of the chemicals, and fell some seven feet into the tank. He was rescued by co-workers wearing oxygen masks and rushed to the hospital, but apparently he suffered a period of anoxia in the tank which led to some damage to the left hemisphere of the brain. Thompson recovered after three days in the Intensive Care Unit of the hospital, but since the date of the accident he has suffered severe and debilitating headaches, and psychiatric workers indicate that he is also suffering from a profound depression.

Thompson was "bored" by sitting around the house during his convalescence and returned to work at the chemical cleaning business. However, his pain from the headaches gradually became so severe that he stopped working. Thompson has consulted many doctors, including specialists in a wide variety of disciplines, in his effort to rid himself of the headaches, which prevent him from sleeping and cause him such pain that his eyes water and he cannot see to work. All efforts have been unsuccessful.

Physicians give a number of different explanations for the headaches, and most believe they stem from the industrial injury or other chemical exposure, although some say that they may be of "psychogenic" origin, deriving from Thompson's severe depression. Other doctors believe the depression is caused by his inability to find relief from the headaches. In any event the inescapable impression which emerges is that of a profoundly sick and miserable person, unable to work or sleep, whose irritability and mental problems in the past three years have resulted in the breakup of his marriage.

The Administrative Law Judge (ALJ) found that Thompson could not return to his former work in the chemical cleaning job. He found, however, that Thompson's problems were not sufficiently severe to constitute disability, and that Thompson could perform other jobs. Neither finding is supported by substantial evidence.

The fact that physicians are unable to determine the precise cause of the claimant's problems is not evidence of lack of disability, if those problems result in inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment of sufficient severity. *Hall v. Secretary,* 602 F.2d 1372, 1375 (9th Cir. 1979). In this case, the claimant's treating physician, Dr. Maletsky, and a consulting physician, Dr. Hughes, concluded that the claimant is disabled. Exhibit 74 is the report of Dr. Maletsky in which he indicates that Thompson is disabled and that he would constitute a danger at his former place of employment. Exhibit 76 is the report of Dr. Hughes who concludes that Thompson is disabled due to the industrial injury and incapable of gainful employment.

The ALJ ignored these reports and relied on portions of the report of Dr. Parvaresh. The ALJ specifically cites the fact that Dr. Parvaresh found the claimant "appropriately dressed" for the interview, and not in "acute distress." However, in a portion of his report uncited by the ALJ, Dr. Parvaresh opines as follows:

It is my clinical opinion that Mr. Gerald Thompson presently presents clinical evidence of psychoneurotic depressive disorder within the background of obsessive compulsive personality . . . . As far as treatment is concerned, this gentleman certainly is in need of treatment and . . . perhaps a course of electrotherapy might be more helpful . . .

The decision of the Secretary must be affirmed if it is supported by "substantial evidence," *Vidal v. Harris,* 637 F.2d 710, 712 (9th Cir. 1981), but the application of the substantial review test must be made on the basis of a review of the record as a whole, not just the evidence which supports the finding. *Walker v. Matthews,* 546 F.2d 814, 818 (9th Cir. 1976). The district court "cannot affirm the examiner's conclusion simply by isolating a specific quantum of supporting evidence." *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975).

In this case the overwhelming evidence is that Thompson is disabled. Any finding to the contrary is not supported by substantial evidence.

The Secretary sought to rebut the evidence of disability, by coming forward with evidence that the claimant can nevertheless engage in substantial gainful activity. *Kornock v. Harris,* 648 F.2d 525, 526 (9th Cir. 1981). This was done through the receipt of the testimony of a vocational expert, which is the approved practice. *Hall v. Secretary,* 602 F.2d 1372, 1377 (9th Cir. 1979). The vocational expert came to the hearing with a list of jobs which he felt that Thompson could perform, but testified that, based upon his observation of Thompson in person, Thompson could not in fact perform the listed jobs. Transcript at pp. 105–108. The ALJ attempted to rehabilitate the witness through leading questions, and the witness eventually testified that, if he did not consider the claimant's pain or the findings of the clinicians, Thompson could perform the listed jobs. This "testimony" is entitled to no weight at all, for it is of course completely at variance with the medical evidence which the vocational expert must, and did, consider. *Kornock v. Harris,* 648 F.2d 525 (9th Cir. 1980) (Failure

of ALJ and vocational expert to take medical evidence into account is ground for reversal.) In my opinion the present case is but another example of the wisdom of requiring the live testimony of a vocational expert at such proceedings, *see Hall v. Secretary, supra,* at 1377. There should be a *per se* rule to this effect, requiring outright reversal of the Secretary's "finding" where no vocational expert testified. *See Bonilla v. Secretary,* 671 F.2d 1245 (9th Cir. 1982). A record of the live testimony of the vocational expert affords the only meaningful opportunity for the district court to conduct an adequate review of the Secretary's findings.

The decision of the Secretary is reversed, and the case is remanded to the Secretary for granting of benefits based upon the application of June 9, 1980.