**Ruth PERERA, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**No. C–82–1349 EFL.**

United States District Court, N.D. California.

March 14, 1983.

Robert Taren, Santa Cruz, Cal., for plaintiff.

Joseph P. Russoniello, U.S. Atty. by Patrick S. Bupara, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## ORDER

LYNCH, District Judge.

Ruth Perera through her representative payee Victor Perera brought this action under 42 U.S.C. § 1383(c)(3) for review of a final decision by the Secretary of Health and Human Services (Secretary) terminating claimant's Supplemental Security Income (SSI) eligibility status as of July 1978 and determining that recovery of the resulting overpayment which occurred during the period from July 1978 to June 1980 should not be waived under 20 C.F.R. § 416.550(a). The Court must determine whether substantial evidence in the administrative hearing record supports the determination of the Administrative Law Judge (ALJ) that claimant held resources in excess of the eligibility limit of $1,500.00, *see* 42 U.S.C. § 1382(a)(1)(B), and that claimant's representative payee was not "without fault" in causing or accepting the overpayment of benefits to the claimant during the period from July 1978 to June 1980 in the amount of $7,510.39. 42 U.S.C. § 405(g), 1383(c)(3); *see Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Vidal v. Harris,* 637 F.2d 710, 712 (9th Cir.1981).

Claimant is a 45 year old unmarried woman suffering from psychiatric disability who became eligible for SSI benefits on January 1, 1974. In May 1979 claimant's representative payee, her brother Victor Perera, reported that claimant had received a payment of $444.85 in 1979 from the Banco Industrial of Guatemala City, Guatemala, which he characterized as interest remaining from their deceased father's estate in Guatemala. The Social Security Administration (SSA), in a statement dated June 18, 1979, acknowledged that Victor Perera had acted in good faith in reporting the amount received and therefore determined that the report was timely. The SSA then wrote to the Banco Industrial of Guatemala and plaintiff's other brother, David Perera, who lives in Guatemala, in order to ascertain the source of the interest payments. Upon receiving no response from either party, the SSA wrote to Victor Perera in November 1979 requesting that he determine the exact source of the payments.

In April 1980, as a result of his correspondence with Guatemalan relatives, Victor Perera determined that the yearly checks were dividend checks from Banco Industrial stock which had been purchased for plaintiff by the executor of her deceased father's estate pursuant to the terms of the decedent's will. Victor Perera notified the SSA of this and also of the receipt in March 1980 of a $382.61 dividend payment from the Banco Industrial. In May 1980 the Banco Industrial informed Victor Perera that since May 1975 Ruth Perera had held 287 shares of Banco Industrial stock which carried a nominal Guatemalan currency value of 2,870 Quetzales, the original purchase price. As the exchange rate between Guatemalan Quetzales and United States Dollars had remained at a ratio of 1:1 since 1975, the SSA concluded from the foregoing that plaintiff had held resources in excess of the $1,500.00 eligibility limit. In June 1980 the SSA therefore informed plaintiff that her benefits would immediately be suspended, and on July 2, 1980 the SSA informed plaintiff that she was liable for an overpayment in the amount of $7,510.39 for the period from July 1978[1] through June

1. Although the stock had been purchased in May 1975, the SSA stated (Tr 126) that July

1980. Soon thereafter plaintiff's representative payee, Victor Perera, attempted to ascertain the equity value of the stock but discovered upon inquiry that there was no market for the stock in the United States. Furthermore, David Perera, the brother in Guatemala, informed him that the issuing Guatemalan bank did not buy back its own stock and that due to the political unrest in Guatemala it would be difficult to find a Guatemalan purchaser because it was generally feared that the Guatemalan banks would nationalize, making Banco Industrial stock valueless.

In January 1981 Victor Perera traveled to Guatemala on business and at that time was able to sell the stock by placing an advertisement in a local paper. The sale price of the stock was 2,439.50 Quetzales, but even though the exchange rate between Quetzales and United States Dollars remained at a 1:1 ratio, the National Bank of Guatemala which handles currency exchanges would not permit more than $1,500.00 worth of Guatemalan currency to be exchanged for United States Dollars. Victor Perera exchanged that amount and procured an additional $500.00 in an exchange with a relative. He returned to the United States in March 1981 with approximately $2,000.00 in proceeds from these currency exchanges, leaving the remaining 439.50 unconvertible Quetzales in a Guatemalan bank account.

The determination of the SSA that claimant was ineligible for SSI benefits as of July 1978 and that she was liable for overpayments from that date until June 1980 was considered *de novo* by an ALJ. After due notice, a hearing was held on January 21, 1981 at which counsel for claimant requested a continuance due to Victor Perera's difficulties in ascertaining the equity value of the Banco Industrial stock. The ALJ denied the request for continuance, but granted leave to submit additional materials relating to the issue of the stock's equity value. The stock was sold on January 28, 1981; the information pertaining to

its sale and the exchange of a portion of the proceeds into United States Dollars was submitted to the ALJ in February 1981. On April 9, 1981 the ALJ issued his opinion, having considered the materials submitted after the January hearing.

The ALJ concluded that the claimant's 287 shares of Banco Industrial stock held during the period subject to a revised determination of eligibility (July 1978 to June 1980) were not excludable from resource consideration. He further concluded that the 1975 purchase price (2,870.00 Quetzales) and the 1981 sale price (2,439.50 Quetzales) were roughly equivalent to a like amount in United States Dollars and were representative of the equity value such that the claimant's resources exceeded the $1,500.00 eligibility limit during the period at issue. Finally, the ALJ determined that recovery of overpayments should not be waived under 20 C.F.R. § 416.550(a) because the representative payee should have known that the income received from Guatemala and the resources from which it was derived would have a direct bearing on the claimant's SSI payments.

The Appeals Council approved the ALJ's decision on February 22, 1982. This action was filed on April 7, 1982.

This Court's review is limited to the question whether the Secretary's findings of fact are supported by substantial evidence. 42 U.S.C. § 405(g); *Vidal v. Harris,* 637 F.2d 710, 712 (9th Cir.1981). The evidence must be such that a reasonable mind might accept it as adequate to support the challenged conclusion. *Hall v. Secretary of HEW,* 602 F.2d 1372, 1374 (9th Cir.1979).

*The Stock as an Includable Resource*

■ To be eligible for SSI benefits, a single individual must not possess resources in excess of $1,500.00. 42 U.S.C. § 1382(a)(1)(B). The term "resources" is defined in 20 C.F.R. § 416.1201(a) as

cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to

1978 was the earliest month that they could make a revised determination of eligibility

based on the new material and evidence provided.

cash to be used for his support and maintenance. If the individual has the right, authority or power to liquidate the property, or his share of the property, it is considered a resource of the individual (or spouse).

With regard to "liquid resources" the regulations provide:

> Liquid resources are those assets that are in cash or are financial instruments which are convertible to cash. Liquid resources include cash on hand, cash in savings accounts or checking accounts, stocks, bonds, mutual fund shares, promissory notes, mortgages, and similar properties. Liquid resources, other than cash, are evaluated according to their equity value.

*Id.* § 416.1201(b).

In construing the income and resource limitations in eligibility provisions of the Aid to Families with Dependent Children (AFDC) program, 42 U.S.C. § 602(a)(7), courts have noted a longstanding policy reflected in the regulations of interpreting the "income and resources" clause such that in determining eligibility "only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered." 45 C.F.R. § 233.-20(a)(3)(ii)(c); *see Lewis v. Martin,* 397 U.S. 552, 555 & n. 6, 556, 90 S.Ct. 1282, 1283–84 & n. 6, 1284, 25 L.Ed.2d 561 (1970); *National Welfare Rights Organization v. Weinberger,* 377 F.Supp. 861, 867–68 (D.C.1974). No similar explicit qualification is present in the regulations applicable to the SSI eligibility provisions pertaining to resources. *See* 20 C.F.R. §§ 416.1201–416.-1266. However, the language in the resource definition specifying as includable those resources which an individual "could convert to cash to be used for his support and maintenance" indicates that the resources intended are only those currently available. The SSI regulations have implicitly been so interpreted. *See Blaylock v. Harris,* 531 F.Supp. 24, 26 (W.D.Mo.1981) ("Because the plaintiff is presently entitled to a full refund of the amount credited to his retirement account, he can readily convert the $4,250.00 credit to cash and use the cash for his support and maintenance.").

The first issue, therefore, is whether the record contains substantial evidence to support the ALJ's conclusion that the Banco Industrial stocks held in Ruth Perera's name were an available resource in the sense that they were readily convertible to cash during the period from July 1978 to June 1980, and thus includable for purposes of eligibility determination.

Undisputed evidence before the ALJ established that the Banco Industrial stock was purchased for Ruth Perera in May 1975 and held in her name until it was sold by her representative payee in January 1981 through a newspaper advertisement. The fact that the stock was actually converted to cash in January 1981 raised a proper inference that it could have been converted to cash at an earlier date during which it was held in claimant's name. The only evidence in the record that tends to dispel this inference is the letter from claimant's brother, David Perera, dated September 10, 1980, which stated that the Banco Industrial does not buy its own stocks and that the deteriorated political situation in Guatemala may adversely affect the market for the stocks. Nothing in the record establishes that the political instability did in fact affect the market for Banco Industrial stock for the time period during which the market was allegedly affected.

Plaintiff argues that because neither she nor her representative payee had knowledge of her ownership of the stocks until April 1980 and because Victor Perera was not able to sell the stocks until January 1981, the stocks should not be considered available as a resource until their actual sale. The regulations, however, clearly focus on the present potential to liquidate assets, not the actual time of conversion to cash, when defining the assets includable as available resources. Additionally, even if knowledge of the existence of the stock is considered a prerequisite to having the right, authority, or power to liquidate it, the ALJ noted that both Ruth Perera and Victor Perera had received dividends annu-

ally since 1977 from stock held for each of them, thus expressing his doubt of the credibility of the assertions that they were unaware of the existence of stock holdings until April 1980.

This Court concludes that substantial evidence supports the finding of the ALJ that the Banco Industrial stocks held in claimant's name were not excludable from resource consideration for SSI eligibility purposes.

*Valuation of the Stock*

The regulations provide that liquid resources such as the stocks herein at issue "are to be evaluated according to their equity value." 20 C.F.R. § 416.1201(b). "Equity value" is defined as: "(i) The price that item can reasonably be expected to sell for on the open market in the particular area involved; minus (ii) Any encumbrances." *Id.* § 416.1202(c)(2).

Based on the evidence that the stock had been purchased in 1975 for 2,870.00 Quetzales and sold in 1981 for 2,439.50 Quetzales and representations of counsel that the exchange rate between United States Dollars and Guatemalan Quetzales had remained at a 1:1 ratio for the period at issue, the ALJ concluded that the value of the stock exceeded the eligibility limit of $1,500.00 for the entire period from July 1978 to June 1980.

The valuation guidelines set forth in regulation 416.1202(c)(2), however, presuppose that the entire cash proceeds from the sale of an item, minus encumbrances, would be available for use in the support and maintenance of the individual who owned the asset. They do not address the atypical situation presented herein where there exists no United States market for particular assets located in a foreign country and where the sale of the assets in the foreign locale may generate foreign currency proceeds subject to currency exchange limitations that would in practical effect reduce the amount of cash available to the individual for use in his or her support and maintenance. In such a situation this Court concludes that a rational interpretation of the regulations pertaining to resources requires a valuation in terms of the exportable United States Dollar proceeds that may reasonably be expected to be generated from the sale of the asset in the foreign country. Such an interpretation would comport with the purposes of the statutory and regulatory provisions because it would tend to equalize the status of SSI recipients who hold resources readily convertible to cash on the United States market with those who hold resources the market for which is restricted to a particular foreign country. *Cf. Antonioli v. Harris,* 624 F.2d 78, 81 (9th Cir.1980) (regulation setting valuation guidelines for in-kind support is reasonably related to the purposes of SSI regulation enabling legislation because it tends to equalize status of SSI recipients who receive in-kind support and those who do not).

In his evaluation of the evidence the ALJ stated:

> Although the claimant's representative payee may have encountered some difficulties and inconvenience in connection with the conversion of the claimant's Banco Industrial stock into cash to be used for her support and maintenance, such hardships did not directly affect the value attached to the claimant's stock itself in Guatemala.

The ALJ thus did not determine value in the context of value available to claimant in the United States.

Although there is nothing in the record disputing the existence in January 1981 of the $1,500.00 Guatemalan currency exchange limitation, the ALJ made no findings as to whether such a limitation did in fact exist during all or part of the period from July 1978 to June 1980, nor did he determine whether it would have been possible for claimant's representative payee to obtain United States Dollars beyond any such limitation through an informal exchange such as occurred in January 1981. Without such findings this Court cannot determine whether the record, viewed as a whole, yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ that the claimant's stock was at all times during the period at

issue worth United States Dollars in excess of $1,500.00.

*Waiver of Overpayment Recovery*

■ Claimant's representative payee also challenges the ALJ's finding that he was not without fault in connection with any overpayment resulting from claimant's holding excess resources during the July 1978 to June 1980 period. Although this Court has determined that further findings are necessary to establish the fact of overpayment due to excess resources, if excess resources indeed existed they resulted from the failure of claimant's representative payee to furnish information about the source of claimant's Guatemalan income.

Title 42 U.S.C. section 1383(b) directs the Secretary to make appropriate provisions in cases of overpayment that avoid penalizing an individual who was without fault in connection with the overpayment if adjustment or recovery of the overpayment would defeat the purposes of the SSA, be against equity and good conscience, or impede efficient or effective administration of the Social Security Act due to the small amount involved. Regulation 416.550 sets forth waiver of recovery as the appropriate action when the above conditions are met. 20 C.F.R. § 416.550. Regulation 416.552 discusses the "without fault" prerequisite to waiver set forth in regulation 416.550(a). Section 416.552 states that the determination depends on all of the pertinent circumstances surrounding the overpayment, including the payee's knowledge of reporting requirements and efforts to comply with them. The regulation then states:

> Although the finding depends on all of the circumstances in the particular case, an individual will be found to have been at fault in connection with an overpayment when an incorrect payment resulted from one of the following:
>
> (a) Failure to furnish information which the individual knew or should have known was material . . . .

20 C.F.R. § 415.552.

The evidence in the record includes Victor Perera's statement that he had received annual payments beginning 1977 from the Banco Industrial of Guatemala City, both on his own behalf and on claimant's behalf as her representative payee. Although Victor Perera did not report receipt of payments on claimant's behalf until 1979, the SSA at that time determined that he had acted in good faith and therefore the report was timely. Nothing in the record, however, indicates whether the SSA at that time knew that Victor Perera was also receiving similar payments on his own behalf. The ALJ concluded that even if claimant and her representative payee were genuinely unaware that the payments were derived from Guatemalan stock assets, Victor Perera should have known that such income and the resources from which it was derived would be material to claimant's SSI payments. The necessary information was finally obtained through Victor Perera's correspondence with claimant's brother, David Perera, in Guatemala at the behest of the SSA in November 1979. The failure of the representative payee to make immediate efforts to discover the necessary information rather than wait until directed to do so by the SSA supported the ALJ's conclusion that he was not without fault in connection with the overpayments. This Court finds that there is substantial evidence in the record to support the ALJ's conclusion that claimant's representative payee was not without fault in connection with whatever overpayment might have occurred as a result of claimant's possession of the Guatemalan stocks.

*Conclusion*

Accordingly, this Court concludes that there is cause for a limited remand to the Secretary for the purpose of receiving evidence on whether Guatemalan currency exchange limitations existed during the period at issue and whether such limitations in fact created a diminution factor that would affect the exportable United States Dollar value of claimant's Banco Industrial stocks.

Plaintiff's motion for summary judgment is denied; defendant's motion for summary judgment is denied. Plaintiff's motion for remand is granted; the case is remanded to

the Secretary for proceedings not inconsistent with this opinion.

IT IS SO ORDERED.