Leslie RAY, Plaintiff,

v.

Shirley S. CHATER, Commissioner
of Social Security, Defendant.

No. C 95–20708 JW.

United States District Court,
N.D. California.

July 23, 1996.

Maxine R. Benmour, Law Office of Angelina Valle, San Jose, CA, for plaintiff.

John Hemann, Assistant United States Attorney, San Francisco, CA, for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WARE, District Judge.

Plaintiff Leslie Ray brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income benefits. The Court has read the moving and responding papers. Based upon all pleadings filed to date, the Court GRANTS Plaintiff's motion to remand the case to the Commissioner of Social Security and DENIES Defendant's motion for summary judgment.

## BACKGROUND

Plaintiff, who was born on July 31, 1962 suffers from diminished intellectual function-

ing and dyslexia (TR 19). He graduated from high school by taking special education courses and has past relevant work experience as a busboy, scrap worker and dock worker. He was last employed in 1989 (TR 18). Plaintiff lives with his mother, who claims that Plaintiff is incapable of independently performing many activities of daily living and that he has difficulty maintaining employment due to his inability to keep pace. The record in this case is sparse. It contains only two psychological evaluations of Plaintiff's mental capacity. The first evaluation was performed on May 8, 1993 by Dr. Joseph Pazdernik, Ph.D., a licensed psychologist. The results indicate Plaintiff has a full scale I.Q. of 74, a verbal score of 72, and a performance scale of 79.[1] The second evaluation was performed on February 2, 1995 by a psychologist with Santa Clara Valley Medical Center, Dr. Karzmark Ph.D., who found Plaintiff has an I.Q. of 67.

Plaintiff applied for Social Security disability benefits on January 21, 1993 and for Supplemental Security Income benefits on January 8, 1993. The Plaintiff's claim was denied initially and upon reconsideration. Plaintiff's claim was then heard before an Administrative Law Judge (ALJ), who also denied Plaintiff benefits. Plaintiff did not have counsel present at the hearing, rather his mother served as his representative. Upon the Appeals Council denial of a request for review, Plaintiff brought this civil action before the Court.

## DISCUSSION

### 1. LEGAL STANDARDS

#### a. General Legal Standard

■■■ The District Court's scope of review of the ALJ's decision is limited. This court will not disturb the ALJ's denial of disability benefits unless the ALJ's findings of fact are not supported by substantial evidence or the ALJ failed to apply the proper legal standard. *Paulson v. Bowen*, 836 F.2d

---

1. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(D) states "In cases where more than one I.Q. is customarily derived form the test administered, i.e. where verbal, performance, and full-scale I.Q.s are provided as on the [Wechsler Adult Intelligence Scale] WAIS, the lowest of these is used in conjunction with listing 12.05. Thus, in the case at bar, Plaintiff has an I.Q. of 72 according to Dr. Pazdernik's evaluation."

1249, 1250 (9th Cir.1988). "Substantial evidence means more than a scintilla," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), but "less than a preponderance," *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.1988). It means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427. To determine whether there is substantial evidence to support the ALJ's findings, this court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.1986). Questions of credibility and resolution of conflicts in the testimony are functions solely for the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1984).

### b. The ALJ Has a Duty to Develop the Record

■■■■ The ALJ has an independent duty to fully develop the record at disability hearings. "Lack of counsel does not affect the validity of the hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings." *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir.1981). However, the ALJ's duty is heightened when the claimant is unrepresented: "where the claimant is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Higbee v. Sullivan* 975 F.2d 558, 561 (9th Cir.1992). The duty is further heightened in cases involving mental impairments. *DeLorme v. Sullivan* 924 F.2d 841, 849 (9th Cir.1991). In *Higbee*, the court cites *Thompson v. Sullivan*, 933 F.2d 581, 586 (7th Cir. 1991), which states "When a claimant is both unrepresented and suffers from a mental impairment ... the ALJ's duty to carefully develop the record is even greater." Thus, failure to fully develop the record may warrant remand of the ALJ's decision.

### 2. THE RECORD REGARDING SECTION 12.05 IN APPENDIX 1

In the case at bar, claimant appears to have been prejudiced because the ALJ failed to explore whether claimant qualifies as disabled under 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(d) in Appendix 1. 20 C.F.R. § 404.1520 outlines the five sequential steps the ALJ must use in determining if a claimant is eligible for disability benefits:

1). Whether the claimant is currently working

2). Whether the claimant's impairment is severe

3). Whether the claimant suffers from an impairment listed in Appendix 1

4). Whether the claimant can perform past relevant work

5). Whether the claimant can do other work if precluded from performing past relevant work

The Plaintiff potentially qualifies as disabled under § 12.05(D)(1) & (3) in Appendix 1 due to mental retardation. The first prong of § 12.05 states in relevant part that: "Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)." The second prong states that "The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." Requirement D states "A valid verbal, performance, or full scale IQ of 60 through 70 ... resulting in two of the following:

1). Marked restriction of activities of daily living; or

2). Marked difficulties in maintaining social functioning; or

3). Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4). Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms."

### a. The Record Supports the Conclusion that Plaintiff Meets the First Prong of § 12.05

■■■ The only evidence regarding claimant's I.Q. are two psychological evaluations.

Dr. Karzmark found that Plaintiff has an I.Q. of 67, and Dr. Pazdernik found Plaintiff has and I.Q. of 72. When there are differing scores from two different I.Q. tests, the regulations do not specify which score should be relied upon. However, the regulations do state "where more than one I.Q. is customarily derived form the test administered, i.e. where verbal, performance, and full-scale I.Q. are provided ... the lowest of these is used in conjunction with listing 12.05." Thus, it can be inferred that when multiple I.Q. scores are available the Regulations prefer the lowest score.

Based upon Dr. Karzmark's evaluation, Plaintiff meets the first prong of 12.05(d). In *Fanning v. Bowen*, 827 F.2d 631 (9th Cir. 1987), the claimant asserted he was disabled under 12.05(c). As in our case, the record contained two differing psychological evaluations of the Plaintiff's I.Q. The Court found "that Fanning's I.Q. scores obtained during psychological testing by two clinical psychologists ranged from a high of 76 to a low of 69, thereby satisfying the first prong of § 12.05(c)," *Id.* at 632. The court relied upon the lowest score, and proceeded to consider the second prong of 12.05(c). In the case at bar, the ALJ relies solely on Dr. Pazdernik's evaluation, thus dismissing the possibility that claimant meets the first prong of 12.05(d).

**b. Condition (1) of § 12.05(d)**

■ By relying on Dr. Pazdernik's score, the ALJ failed to explore whether Plaintiff satisfies the second prong of 12.05(d), despite evidence in the record indicating that claimant meets conditions (1) and (3). Condition 1 is "Marked restriction of activities of daily living." "Section 12.00(C)" defines "marked" as "more than moderate, but less than extreme. A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively." "Section 12.00(C)(1)" states activities of daily living include

adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for one's grooming and hygiene ... etc.... [T]he quality of these activities is judged by their independence, appropriateness and effectiveness. It is necessary to define the extent to which the individual is capable of initiating and participating in activities independent of supervision or direction.

"Section 12.00(D)" states documentation regarding the claimant's activities of daily living can be provided by medical sources as well as "by others, including family members who have knowledge of the individual's functioning."

Plaintiff's mother completed a medical and vocational statement on behalf of claimant in which she states that claimant is "not able to care for himself" and that he "needs me to prepare his food. He cannot even find cereal or boil spaghetti." (TR 148). Dr. Karzmark's psychological evaluation contains a collateral interview with the claimant's mother, in which she states that claimant must be reminded to perform basic self care activities, including showering and that he sometimes needs assistance with toileting. She also states he is unable to cook due to a lack of basic judgment regarding proportions. For instance he places a large amount of spaghetti in a small pot, causing it to boil over; and he uses an entire cube of butter to fry eggs. (TR 155). The mother's testimony is corroborated by Dr. Karzmark's evaluation, which states that claimant, "appears to be someone who needs supervision to some extent in all but the most basic and routine daily activities." (TR 156). Furthermore, the ALJ did not specifically question plaintiff's mother regarding claimant's daily activities, rather, she offered the information on her own initiative. (TR 65–66).

■ The Ninth Circuit has held that the ALJ can not discount testimony from lay witnesses without articulating specific reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993). The mother's testimony, which is corroborated by Dr. Karzmark and uncontradicted by Dr. Pazdernik, presents compelling evidence regarding Plaintiff's capacity to independently perform activities of daily living. However, the ALJ

did not give it full consideration nor did he present specific reasons for disregarding the testimony.

### c. Condition (3) of § 12.05(D)

The ALJ also failed to explore whether plaintiff meets condition (3): "Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in timely manner (in work settings or elsewhere)." "Section 12.00(C)(3)" provides the following definition of (3): "Concentration, persistence and pace refer to the ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings."

 The record indicates Plaintiff has deficiencies of concentration, persistence and pace. In his report, Dr. Pazdernik states Plaintiff's visuomotor coordination and persistence are his major assets, reaching into good average functional range. However, he qualifies his determination by stating "at least in a limited time frame." (TR 145). In his conclusion, Dr. Pazdernik states claimant, "seems to be able to work in a persistent manner, at least for shorter periods of time." Dr. Karzmark found that plaintiff performed "very slowly on tests with a time component," thus demonstrating a deficiency in concentration. "Section 12.00(C)(3)" states "in psychological test ... concentration is assessed ... through tasks that must be completed within established time limits."

The ALJ did not question claimant regarding his concentration or his ability to keep pace in a work setting. Claimant's mother discussed the Plaintiff's ability to keep pace briefly and without prompting from the ALJ. Once the topic was raised, it appears that it was not fully explored pursuant to § 12.05. (TR 66).

The record indicates Plaintiff meets the requirements of § 12.05(d). However, the record does not contain sufficient evidence "as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir.1993). When the court finds the record is incomplete, it is within its discretion to remand the case for additional evidence. *Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir.1993). "Remand is proper where additional administrative proceedings could remedy defect." *Kail v. Heckler*, 722 F.2d 1496 (9th Cir.1984).

The record offers Dr. Karzmark and Dr. Pazdernik's conflicting evaluations as the primary evidence regarding claimant's mental condition.[2] The ALJ concludes that Dr. Pazdernik's evaluation is correct: "Having observed the claimant as a witness at the hearing, the undersigned concludes that Dr. Pazdernik's assessment is a more accurate reflection of the claimant's true intellectual ability." (TR 20). However, the ALJ's observations were made during a 25 minute hearing. Because the record in this case is sparse and because Dr. Karzmark offers a conflicting evaluation bolstered by testimony from the Plaintiff's mother, the Court finds the record is not fully developed.

### CONCLUSION

Based upon the foregoing, the Court GRANTS Plaintiff's motion to remand the case to the Commissioner of Social Security and DENIES Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

---

2. It is important to note that Dr. Karzmark's report was presented to the ALJ just prior to the hearing (TR 47), thus it is possible he was unable to give it full consideration.