James R. **FYFFE**, Plaintiff,

v.

Margaret M. **HECKLER**, Secretary of Health and Human Services, Defendant.

No. Civ. 83–226 Phx. WPC.

United States District Court, D. Arizona.

Jan. 24, 1984.

---

Joel F. Friedman of Jerome & Gibson, Phoenix, Ariz., for plaintiff.

John R. Mayfield, Asst. U.S. Atty., Phoenix, Ariz., for defendant.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

Plaintiff, James R. Fyffe, has brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Secretary of Health and Human Services. Fyffe filed applications for disability insurance benefits and supplemental security income benefits on May 18, 1981. The applications were denied initially and on reconsideration. Fyffe appeared with counsel before an administrative law judge (ALJ). On June 26, 1982, the ALJ found that Fyffe was not disabled. This decision became the final decision of the Secretary when the Appeals Council denied Fyffe's request for review.

Fyffe alleged that he became unable to work on January 2, 1981, due to back problems. Tr. at 9. Fyffe also suffers from dysthymic disorder, mild mental retardation, and borderline personality disorder. The ALJ determined that Fyffe's disorders do not preclude him from performing sedentary work. The ALJ applied Rule 201.24 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grids"), and concluded that Fyffe was not disabled at any time through the date of the ALJ's decision. Tr. at 20. Fyffe has moved for summary judgment to reverse the Secretary's decision. The Secretary has filed a cross-motion for summary judgment to affirm the decision.

Fyffe contends that substantial evidence does not support the ALJ's conclusion that Fyffe is not subject to any significant mental or emotional impairment that significantly limits the range of unskilled jobs that he can perform. He contends that the ALJ misconstrued the findings of the medi-

cal experts; that the ALJ relied on his personal opinion of "observable" signs of mental disorders; and that he failed adequately to address the interrelationship among Fyffe's multiple impairments.

*Discussion*

Disability insurance benefits may be awarded to an applicant who is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death" or which may last (or has lasted) for at least twelve consecutive months. 42 U.S.C. § 423(d)(1)(A). An individual is under a disability "only if his physical or mental ... impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). In reviewing the Secretary's findings of fact, the court must determine whether the Secretary's decision is supported by substantial evidence. *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir.1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). If there is substantial evidence to support the Secretary's decision, that decision must be upheld even if there is evidence on the other side. *See Harvey v. Richardson*, 451 F.2d 589, 590 (9th Cir.1971). The court, however, must "look at the record as a whole and not merely at the evidence tending to support a finding." *Walker v. Mathews*, 546 F.2d 814, 818 (9th Cir.1976).

■ The ALJ determined that Fyffe's subjective symptoms of pain do not preclude substantial gainful activity. Tr. at 17. In making this determination, the ALJ stated that he considered Fyffe's testimony, the objective medical evidence, Fyffe's daily activities, usage and type of medication, and Fyffe's tone and demeanor at the hearing. *Id.* First, the ALJ noted that

Fyffe was in no apparent discomfort during the hearing. The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing, provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled. *Day v. Weinberger*, 522 F.2d 1154, 1156–57 (9th Cir.1975). *See also, Aubeuf v. Schweiker*, 649 F.2d 107, 113 (2d Cir.1981).

Second, the ALJ found that Fyffe was not a reliable historian because there were inconsistencies in the various records, and because Fyffe's testimony was inconsistent with those records. For example, the ALJ noted that Fyffe testified that he had not been in the military, while one part of the record suggested that Fyffe had been discharged after a few days of service. The ALJ also noted that Dr. Green received information that Fyffe last worked in April, 1981, but that Fyffe told Dr. Westman that he had last worked "during the summer" of 1981. During the hearing, the ALJ questioned Fyffe as to inconsistencies. See, tr. at 41–43, 51. Fyffe testified that he was not good at dates. Tr. 42.

■ In making his assessment that Fyffe's being a poor historian adversely affected his credibility, the ALJ apparently did not take into account his own conclusion that Fyffe is "mildly mentally retarded." Furthermore, Fyffe's inability to remember dates does not bear at all on his credibility as to the severity of his present pain.

In addition, the ALJ appears not to have considered Dr. Simonis' statement that Fyffe's allegations of pain were consistent with the clinical findings, and that the pain affected Fyffe's ability to function in a "moderately severe" manner. Tr. 133. He also appears not to have considered Dr. Westman's report that stated that Fyffe's allegations of pain were consistent with the clinical findings, and that the pain affected Fyffe's ability to concentrate. Tr. 142. No medical evidence supports a finding that Fyffe is not in severe pain.

The ALJ also considered the fact that the only medication that Fyffe presently was

taking was aspirin, that Fyffe had last seen his treating physician three years before the hearing, and that Fyffe had last gone to the county hospital for treatment a year and a half before the hearing. Tr. 51. Fyffe testified, however, that the medications prescribed at the county hospital did nothing for his pain, and that he could not afford to see a physician.

▆ The ALJ also stated that "claimant testified responsively and showed no signs evident to a layman of any thought or emotional disorder." Tr. 17. He used this finding to buttress his determination that Fyffe's subjective symptoms do not preclude substantial gainful activity. All of the medical evidence reveals that Fyffe has thought and emotional disorders. An ALJ may reject the experts' opinions only after giving clear and convincing reasons for doing so. *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981); *Day v. Weinberger*, 522 F.2d at 1156. Here, the ALJ has given no clear and convincing reasons for relying on his own observations. The ALJ's finding that Fyffe's allegations of severe pain do not preclude substantial gainful activity is not supported by substantial evidence.

The ALJ relied on two findings to support his conclusion that Fyffe is capable of at least sedentary activity. First, he noted that Dr. Green restricted Fyffe from sitting and standing for more than two hours. Tr. 105. The ALJ then noted that there was no restriction on sitting for eight hours during an eight hour day if Fyffe had the opportunity to change positions at two hour intervals. Second, the ALJ relied on the lack of credible hearing testimony regarding Fyffe's subjective symptoms.

▆ The ALJ may draw reasonable inferences from the medical evidence. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the ALJ must rely on evidence in the record, however, it is logical that he may not rely *solely* on what is not in the record. Furthermore, the ALJ may not buttress his finding that Fyffe can sit for eight hours by relying on lack of credible hearing testimony regarding Fyffe's subjective symptoms. See discussion, *supra.*

The ALJ's conclusion that Fyffe can perform at least sedentary work is not based on substantial evidence.

The ALJ found that Fyffe is not subject to any significant mental or emotional impairments under the criteria of 20 C.F.R. §§ 404.1545(c) and 416.945(c) that significantly limit the range of unskilled jobs that Fyffe can perform. This conclusion was based on the reports of Drs. Tafur and Westman. The ALJ noted that both doctors had agreed on the probable efficacy of anti-depressant medication. He also noted that Dr. Westman found that Fyffe had only mild to moderate inability to perform repetitive and simple tasks. Although the ALJ's finding is accurate as far as it goes, the ALJ apparently ignored Dr. Westman's other conclusions that Fyffe is "moderately severely" impaired in his ability to relate to other people, ability to understand, remember, and carry out instructions, and respond appropriately to supervision, and that Fyffe is "severely" impaired in his ability to respond appropriately to co-workers, and customary work pressures. The regulations state that the Secretary will consider these factors. See 20 C.F.R. §§ 404.1545(c) and 416.945(c).

Dr. Tafur noted that "I consider that [Fyffe's] ability to hold a job, at the present time, is very limited and that he is in need of psychiatric treatment to include anti-depressant medication." Tr. 113. Although Dr. Tafur believed that anti-depressant medication would help, the ALJ should not have relied only on this one finding, but should have read the doctor's report as a whole. *Hassler v. Weinberger*, 502 F.2d 172, 178 (7th Cir.1974); *cf. Dubose v. Mathews*, 545 F.2d 975, 977 (5th Cir.1977). That report as a whole indicates that Fyffe suffers from significant emotional and mental impairments.

For purposes of clarification, the ALJ separately considered Fyffe's alleged psychological limitations. He noted that Dr. Lavit found no more than moderate impairment of Fyffe's ability to perform simple and repetitive tasks. Again, however, the ALJ apparently ignored Dr. Lavit's finding

that Fyffe's ability to perform basic work related mental functions was moderately severely or severely impaired.

The ALJ also relied on Dr. Simonis' report. Dr. Simonis stated that clinical observation did not confirm the severity of pathology suggested by the psychological tests. Dr. Simonis also suggested that Fyffe had attempted to make himself appear clinically worse than he actually was. In the next sentence of his report, however, Dr. Simonis stated that this "is not to suggest that there are not significant psychogenic manifestations apparent in this personality style." In his discussion of the evidence, the ALJ apparently misconstrued the double negative, concluding that "Dr. Simonis emphasized that there were not significant psychogenic manifestations in the claimant's personality style." Tr. 15. The ALJ noted correctly, however, that Dr. Simonis had stated that Fyffe's ability to perform basic work-related functions was only mildly to moderately impaired.

One of Dr. Simonis' findings on Fyffe's ability to perform work-related functions is contradicted by his narrative report. Dr. Simonis stated in the residual functional capacity questionnaire that Fyffe was "moderately" impaired in his ability to respond appropriately to supervision. This appears to contradict the narrative report that states that Fyffe has "significant" conflict with authority figures. The ALJ did not discuss the discrepancy.

█ Finally, the ALJ did not mention that Dr. Simonis had stated that Fyffe's allegations of pain were consistent with the clinical findings, and that the pain "moderately severely" impaired Fyffe's ability to function. Because the ALJ did not rely on Dr. Simonis' report as a whole, and because a fair reading of that report indicates that Dr. Simonis reached a conclusion contrary to that asserted by the Secretary, Dr. Simonis' report is not substantial evidence for the ALJ's conclusion that Fyffe does not suffer from severe psychological impairments. See *Hassler v. Weinberger, supra; cf. Dubose v. Mathews, supra.*

The ALJ found that Fyffe had the residual functional capacity to do at least sedentary work. He applied the grids and concluded that Fyffe is not disabled.

The grids are used to determine the types of jobs that exist in the national economy. *Heckler v. Campbell,* —— U.S. ——, 103 S.Ct. 1952, 1958, 76 L.Ed.2d 66 (1983). In cases where the grids apply, the Secretary's duty to call vocational expert witnesses is eliminated. *McCoy v. Schweiker,* 683 F.2d 1138, 1148 (8th Cir. 1982). Fyffe argues that his objectively identified psychological disorder is "severe" as defined in the regulations. He then argues that the existence of this severe non-exertional impairment absolutely precludes a directed denial of disability pursuant to the grids. There is some support for Fyffe's argument. *See, e.g., Kail v. Heckler,* 722 F.2d 1496, 1498 (9th Cir.1984); *McCoy v. Schweiker, supra* (where non-exertional impairments are present, the grids may serve only as guidelines); *Roberts v. Schweiker,* 667 F.2d 1143 (4th Cir.1981) (recourse must be had to evidence other than the grids). Here, however, Fyffe's real argument is not with the ALJ's reliance on the grids, but rather is with the ALJ's finding that Fyffe's non-exertional impairment is not so severe as to preclude sedentary, unskilled work. See *Kirk v. Secretary,* 667 F.2d 524 (6th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). The ALJ's finding that Fyffe's non-exertional impairment is not so severe as to preclude sedentary, unskilled work is not supported by substantial evidence. It is only for that reason that the ALJ's reliance on the grids was improper.

*Conclusion*

This court finds the Secretary's decision is not supported by substantial evidence and that plaintiff was disabled within the meaning of the Social Security Act from January 2, 1981. The decision of the Secretary is reversed.

IT IS ORDERED:

1. Defendant's motion for summary judgment is DENIED.

2. Plaintiff's motion for summary judgment is GRANTED. Counsel will promptly submit a form of judgment, approved as to form only by government counsel, for signature by the court.