**ROBISON FRUIT RANCH, INC., Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 96–70482.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 1997.

Decided June 24, 1998.

William A. Morrow, Daniel R. Hardee, White, Peterson, Pruss, Morrow & Gigray, P.A., Nampa, Idaho, for the petitioner.

Carol J. Mackela, Robin M. Stutman, United States Department of Justice, Civil Rights Division, Washington, DC, for the respondent.

Before: SCHROEDER and BEEZER, Circuit Judges, and SCHWARZER,* District Judge.

SCHROEDER, Circuit Judge:

This is a petition for review of a decision of an Administrative Law Judge in the Executive Office of Immigration Review. The ALJ ruled that Petitioner, Robison Fruit Ranch, violated the "document abuse" provision of the Immigration Reform and Control Act (IRCA), 8 U.S.C. § 1324b(a)(6), as it existed before its 1996 amendment.

The ALJ held that Robison violated the Act by requesting specific documents from job applicants when completing Immigration and Naturalization Service Form I–9 for verification of employment eligibility. Robison asked both alien and citizen applicants to show two items of identification when a single document, such as a passport or alien registration card, would have sufficed. The ALJ imposed a $60,000 fine.

Robison requested documents that virtually all applicants had in their possession and in fact commonly used to fill out other required employment forms. No authorized alien had any difficulty complying with the request. The question is whether, in the absence of any showing of discrimination, Robison violated the statute. We conclude it did not.

**DISCUSSION**

The statute in question is 8 U.S.C. § 1324b(a)(6) as it existed during the 1990–93 period, when the events in question occurred. It then provided in pertinent part:

[an employer]'s request, for purposes of satisfying the requirements of [8 U.S.C. § 1324a(b) ], for more or different documents than are required under such subsection or refusing to honor documents tendered that on their face reasonably appear to be genuine shall be treated as an unfair immigration-related employment practice relating to the hiring of individuals.

The statute was amended in 1996 to add an express requirement of discrimination. It now provides that the described documentary requests shall be treated as unfair employment practices "if made for the purpose or with the intent of discriminating against an individual in violation of paragraph (1)." Paragraph (1) is the statute's general anti-discrimination provision, which prohibits discrimination on the basis of national origin or citizenship status, except, of course, against an alien who is not authorized to work. See 8 U.S.C. § 1324b(a)(1). This provision constitutes a key protection against unfairness in the administration of the IRCA's requirement that employers verify that job applicants are either citizens or aliens authorized to work. See 8 U.S.C. § 1324a(b).

The material facts are not in dispute. Petitioner Robison is a family-owned fruit orchard in Idaho and employs a large number of migrant seasonal workers to harvest fruit. Many of the seasonal workers are aliens, and many do not speak or write English.

Central to an understanding of this case is Form I–9 itself. The form used by Robison during the period in question was the 1990 form that is attached as an addendum to this opinion. The form was revised in 1991. The revised form states expressly that employers cannot specify any particular document they will accept from employees. Robison, however, did not begin using the revised form until 1993, after most of the events in question here had occurred.

The purpose of the form is to verify the applicant's identity and eligibility to work. Section 1 of Form I–9, entitled "Employee Information and Verification," requires the

---

* Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

applicant to attest to his work eligibility. Section 2 of the form, entitled "Employer Review and Verification," requires the employer to examine an applicant's documents and certify that the documents appear to be genuine and that the individual is eligible to work in the United States. The employee may present one document from List A or one document from each of Lists B and C. The documents on List A, such as an alien registration card (green card) or a U.S. Passport, establish both identity and work eligibility. The documents on List B, such as a driver's license, establish identity but not eligibility to work. The documents on List C, such as a social security card, establish eligibility to work but not identity.

Throughout the period in question, hiring at Robison Ranch was done primarily by the receptionist-bookkeeper and the office manager. The evidence showed that they commonly requested U.S. citizen applicants to show a driver's license and social security card. They requested alien applicants to show an INS document and a social security card. Some employees were requested to show "two forms of ID." The foreman who assisted Spanish speaking pickers or referred Spanish speaking applicants to the office commonly told them that they would need two forms of ID.

A number of workers testified that they volunteered ID without a specific request. Many of the alien workers used both their green cards and their social security cards when they filled out Section 1, which requires aliens to write down their social security number and alien registration number. These applicants offered the same documents for examination and photocopying when they came to Section 2 of the form.

All of the workers who filled out I–9s were hired, and no worker was rejected for lack of satisfactory documentation. One English speaking U.S. citizen testified that he was told that he could not be hired until he showed his social security card, which he did a day later. No other employee testified that he or she was ever told that hiring required a certain form of ID, and no worker testified that Robison refused proper documents when offered and demanded other documents instead.

In 1993, while investigating other charges, the Office of Special Counsel, Executive Office of Immigration Review, ("OSC") learned of Robison's practice of asking for specific forms of ID or for two forms of ID and determined that this practice violated the document abuse provision, 8 U.S.C. § 1324b(a)(6). Robison's transgression, as far as the OSC was concerned, was in telling applicants that two specific documents would be sufficient for verification purposes. In OSC's view, it was irrelevant that Robison did not intend to discriminate, but rather treated aliens and citizens the same. It was also irrelevant that Robison's practices did not in fact make it any more difficult for aliens to fill out the forms. It appears that the practice for which the government has prosecuted Robison is nondiscriminatory and expeditious treatment of job seekers.

In its petition for review, Robison raises a number of issues, including the vagueness of this statute, the statute of limitations, and the agency's lack of authority to proceed on a "pattern or practice" basis as it did in this case. We do not reach those issues, for the dispositive issue is whether the statute at the time in question required a showing of discrimination. The issue is one of law and we review de novo. *See Torres–Lopez v. May*, 111 F.3d 633, 638 (9th Cir.1997).

▆ In contending that the statute does not require any showing of discrimination, the government looks in isolation at the language of § 1324b(a)(6) as it read prior to the 1996 amendments. That language, standing alone, did not express the discrimination requirement.[1] Paragraph (1) of the statute,

---

1. Section 1324b(a) read:
   **Prohibition of discrimination based on national origin or citizenship status.** *(1)* It is an unfair immigration-related employment practice for a person or other entity to discriminate against any individual (other than an unauthorized alien, as defined in section 274A(h)(3)) with respect to the

hiring, or recruitment or referral for a fee, of the individual for employment or the discharging of the individual from employment
   (A) because of such individual's national origin, or

however, specifically proscribed discrimination in hiring. Paragraph (6) operated only by reference to paragraph (1): "For purposes of paragraph (1), [document abuse] shall be treated as an unfair immigration-related employment practice...." Section 1324b(a)(6) thus incorporates by reference the discrimination provision of § 1324b(a)(1). Paragraph (5) of that statute contained a similar incorporation of the discrimination requirement. It proscribed retaliation against employees who assert their rights under IRCA and provided that an individual "intimidated, threatened, coerced or retaliated against shall be considered ... to have been discriminated against." 8 U.S.C. § 1324b(a)(5). Sections 1324b(a)(5) and (6) form part of the 1990 amendments to the Immigration Reform and Control Act, which were added in order to prevent IRCA's worker eligibility requirements from leading to discriminatory employment practices.

The statute's remedy and penalty provisions confirm that a violation of § 1324b was to be premised on a finding of discrimination. Sections 1324b(d)(1) and (2) stated that OSC investigations into unfair employment practices were to be premised on allegations of knowing and intentional discriminatory activity.[2] And the penalty provision specifically applicable solely to subsection (a)(6), on which the instant penalties were based, provided for "a civil penalty of not less than $100 and not more than $1,000 *for each individual discriminated against.*" 8 U.S.C.

§ 1324b(a)(g)(2)(B)(iv)(IV) (emphasis added). Thus, no penalty may be imposed absent a finding of discrimination. Presumably, had Congress not intended violations to turn on the presence of discrimination, it would not have included the reference to discrimination both in this subsection and in § 1324b(a)(1).

The government contends that § 1324b(a)(6) does not require a showing of discrimination or harm. Rather, in the government's view, any specific document request can subject an employer to liability. For example, if the employer requests a driver's license and a social security card, the employer has requested both more and different documents than may be required. The employee could have shown only a U.S. Passport. Similarly, two different documents, such as a military identification and a birth certificate, could be produced to satisfy the requirement. The government's interpretation would mechanically subject employers to liability for naming documents when in fact the employer was attempting to assist the applicant in satisfying the requirements of Form I–9.

■■ We hold that Congress intended a discrimination requirement in the 1990 statute and merely clarified the statute to state that intent in its 1996 amendment. The evidence unquestionably shows that the employment practices in this case did not create additional burdens to any class of applicants or constitute differential treatment of autho-

---

(B) in the case of a protected individual (as defined in paragraph (3)), because of such individual's citizenship status.

...

(5) Prohibition of intimidation or retaliation. It is also an unfair immigration-related employment practice for a person or other entity to intimidate, threaten, coerce, or retaliate against any individual for the purpose of interfering with any right or privilege secured under this section or because the individual intends to file or has filed a charge or a complaint, testified, assisted, or participated, in any manner in an investigation, proceeding, or hearing under this section. An individual so intimidated, threatened, coerced, or retaliated against shall be considered, for purposes of subsections (d) and (g), to have been discriminated against.

(6) Treatment of certain documentary practices as employment practices. For purposes of paragraph (1), a person's or other entity's re-

quest, for purposes of satisfying the requirements of section 274A(b), for more or different documents than are required under such subsection or refusing to honor documents tendered that on their face reasonably appear to be genuine shall be treated as an unfair immigration-related employment practice relating to the hiring of individuals.

**2.** Section 1324b(d)(2) read:

If the Special Counsel, after receiving such a charge respecting an unfair immigration-related employment practice which alleges knowing and intentional discriminatory activity or a pattern or practice of discriminatory activity, has not filed a complaint before and administrative law judge with respect to such a charge within such 120 day period ..., the person making the charge may ... file a complaint directly before such a judge....

rized aliens and citizens. There could have been no discrimination, and the petition for review must be granted.

In holding that the document abuse provision has required discrimination since its enactment in 1990, we do not fully accept the definition of "discrimination" that Robison offers, however. Robison contends that before there can be any discrimination, there must be an actual showing that the employer refused to hire someone on the basis of an unauthorized or superfluous document request. The statute is regulatory rather than compensatory in nature and did not require employees or applicants to have suffered actual damages. *See* 8 U.S.C. § 1324b(a)(g)(2). An employer who requires aliens to provide documentation not requested of citizens makes it more difficult for aliens to fill out the Form I–9 or to comply with its provisions. Therefore, an employer might well be guilty of discrimination by creating unnecessary and discriminatory obstacles to hiring, regardless of whether applicants are able to surmount them.

In this case, however, the alien applicants were not specially burdened by the employer's requests. Robison simply requested documents the aliens were already using to complete the top portion of Form I–9 as well as the accompanying Treasury Form W–4, which requires a social security number.

The government also argues that the ALJ's interpretation of the statute is entitled to some deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We do not agree for at least two reasons. First, under *Chevron*, "[i]f the intent of Congress is clear, that is the end of the matter." *Id.* at 842, 104 S.Ct. 2778. Second, there is no consistent agency interpretation of this statute. The ALJ's decision in this case is inconsistent with the decision of an ALJ in another case that has virtually identical facts. *See United States v. Zabala Vineyards*, 6 OCAHO 830, 1995 WL 848947 (1995).

The ALJ in *Zabala* concluded that a request for specific documents did not violate § 1324b(a)(6) when the employer requested documents that are in fact routinely present-

ed during the employment process. *Id.* at *11. Inferring a discrimination requirement from the language of the statute, that ALJ held that § 1324b(a)(6) "is not breached in the absence of evidence that ... aliens but not other new hires were required to rely on and produce specific documents." *Id.* at *10. We agree.

The petition for review is GRANTED.