FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JENNIE P. BELTRAN,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security Administration,<br>*Defendant-Appellee*. | No. 09-56255<br><br>D.C. No.<br>2:08-cv-02386-<br>RGK-E<br><br>ORDER AND<br>AMENDED<br>OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Submitted October 8, 2010[*]
Pasadena, California

Filed May 2, 2012
Amended November 14, 2012

Before: Harry Pregerson, Dorothy W. Nelson, and
Sandra S. Ikuta, Circuit Judges.

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Order;
Opinion by Judge Pregerson;
Dissent by Judge Ikuta

**SUMMARY**[**]

The panel amended the opinion and dissent filed on May 2, 2012, reversing the district court's grant of summary judgment to the Commissioner of Social Security and the Commissioner's denial of the claimant's applications for Social Security Disability Insurance benefits and Social Security Income benefits.

The administrative law judge concluded that the 135 jobs regionally and 1,680 jobs nationally for surveillance system monitors was a "significant number" of jobs that the claimant could do, despite her physical and mental limitations. The panel held that the ALJ's decision was not supported by substantial evidence based on the rarity of the surveillance system monitor jobs, regionally and nationally, and considering claimant's physical and mental limitations. Specifically, the panel held that neither the 135 regional jobs nor the 1,680 national jobs constituted a "significant number of jobs" under 42 U.S.C. § 423(d)(2)(A).

In a published order, a majority of the panel denied the petition for panel rehearing, and held that future petitions for rehearing will not be entertained.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge Ikuta dissented. Judge Ikuta stated that the majority usurped the ALJ's role as a factfinder. Judge Ikuta further stated that the majority improperly rejected the ALJ's conclusion that the claimant's physical limitations would not prevent her from working, and improperly rejected the ALJ's conclusion that a significant number of suitable jobs exist in the regional and national economy, a conclusion supported by substantial evidence.

#### COUNSEL

Lawrence David Rohlfing, Law Offices of Lawrence D. Rohlfing, Santa Fe Springs, California, for the plaintiff-appellant.

Jean Marie Turk, Social Security Administration, San Francisco, California, for the defendant-appellee.

#### ORDER

A majority of the panel has voted to deny the petition for panel rehearing and to not entertain future petitions for rehearing. The opinion and dissent filed on May 2, 2012 are hereby amended and attached hereto. With these amendments, the petition for panel rehearing is DENIED and future petitions for rehearing will not be entertained.

IT IS SO ORDERED.

## OPINION

PREGERSON, Circuit Judge:

Jennie Beltran appeals the district court's grant of summary judgment to the Commissioner of Social Security in its review of the Commissioner's denial of benefits. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

## BACKGROUND

Jennie Beltran is a fifty-six-year-old woman suffering from degenerative joint disease of the left knee and wrist, bilateral carpal tunnel syndrome, obesity, heel spurs, degenerative disc disease of the lumbar spine, status post-surgical correction of a fractured right distal tibia, depression, and alcohol abuse. She filed applications for both Social Security Disability Insurance ("SSDI") benefits and Social Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act on March 29, 2002, and again on November 20, 2002. In her applications, Beltran alleged a disability onset date of June 30, 2000. The Commissioner denied the request initially and upon reconsideration. Beltran appealed to an administrative law judge ("ALJ") who affirmed the denial of her claim, holding that Beltran did not suffer from a disability as defined under the Social Security Act. Beltran appealed the ALJ's decision, and her case was remanded to the ALJ.

During a second hearing on December 13, 2007, the ALJ concluded that Beltran had met her burden to establish that she could not perform any of her past relevant work due to her physical and mental limitations. The burden then shifted to

the agency to show that Beltran would nevertheless be able to perform other work.  Thus, the ALJ asked a vocational expert a series of hypothetical questions given Beltran's age, education, work experience, and residual functional capacity. The vocational expert testified that, but for Beltran's ongoing alcohol abuse, she would have been able to work as a surveillance system monitor at all times prior to January 9, 2006.  The vocational expert testified that there were 135 regional and 1,680 national surveillance system monitor jobs available.

The ALJ denied Beltran's application for Social Security Disability Insurance benefits and partially denied her application for Social Security Income benefits. The ALJ concluded that there existed a "significant number" of jobs that Beltran could perform prior to January 9, 2006, and therefore found that Beltran was not "disabled" within the meaning of the Social Security Act prior to that date. The ALJ, however, found that Beltran did become disabled on January 9, 2006—her fiftieth birthday—because of the deterioration in her medical condition caused by her alcoholism, and because she was now classified as "an individual closely approaching advanced age."

Beltran appealed the ALJ's decision to the district court. The district court granted summary judgment to the Commissioner on November 18, 2008, affirming the ALJ's decision to deny disability benefits to Beltran from March 12, 2002, until January 9, 2006.

**STANDARD OF REVIEW**

We review the district court's granting of summary judgment *de novo*. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). We may reverse the Commissioner's decision only if it was not supported by substantial evidence or was based on legal error. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003).

**DISCUSSION**

Beltran alleges that the district court was wrong to grant summary judgment to the Commissioner because the Commissioner erred in concluding that there existed a "significant number" of jobs in the regional and national economy that Beltran could do. Because this is Beltran's only contention, we limit our analysis to answering it.

According to the Social Security Act,

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . . For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means *work which exists in significant numbers either in the*

*region where such individual lives or in several regions of the country.*

42 U.S.C. § 423(d)(2)(A); *id.* § 1382c(a)(3)(B) (emphasis added). The burden of establishing that there exists other work in "significant numbers" lies with the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The ALJ concluded that 135 jobs regionally and 1,680 jobs nationally is a "significant number" of jobs that Jennie Beltran could do, despite her physical and mental limitations. As the ALJ established in her decision, Jennie Beltran suffered from a degenerative joint disease of the left knee and wrists, bilateral carpal tunnel syndrome, obesity, heel spurs, degenerative disc disease of the lumbar spine, post-surgical correction of a fractured right distal tibia, depression and alcohol abuse. All of these limitations existed during the period in question, from March 12, 2002, until January 9, 2006. We consider whether, in light of her limitations, 135 jobs in Jennie Beltran's region, or 1,680 jobs nationally, constitute a "significant number" of jobs.

In *Walker v. Mathews*, 546 F.2d 814, 820 (9th Cir. 1976), we held that an ALJ erred in finding a significant number of jobs where the jobs were "very rare" or generally unavailable to the claimant due to his limitations. This is precisely the situation in Beltran's case. The ALJ found that there existed only 135 jobs regionally or 1,680 jobs nationally that Jennie Beltran could perform. Although, in *Walker*, we never established what number of jobs qualifies as "very rare" or generally unavailable, a comparison to other cases shows that this case fits comfortably under *Walker*'s purview.

We have never set out a bright-line rule for what constitutes a "significant number" of jobs. However, a comparison to other cases is instructive. For example, in *Barker v. Secretary of Health & Human Services*, 882 F.2d 1474, 1479 (9th Cir. 1989), we held that 1,266 jobs regionally is a significant number of jobs. In Jennie Beltran's case, 135 jobs regionally is about 11% of the 1,266 jobs found "significant" in *Barker*; 1,266 jobs *regionally* is also slightly lower than the 1,680 jobs *nationally* available to Beltran. In *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1987) (amended), we stated that 3,750 to 4,250 jobs (or 2 to 4% of the regional jobs available to Beltran) in the Greater Metropolitan and Orange County area (the same region Beltran lives in) was a significant number of jobs. *See also Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (1,300 jobs in Oregon region and 622,000 in the national economy); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (30,000 jobs in Los Angeles County area); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in San Diego County and 64,000 jobs nationwide). In short, when compared to other cases, 135 regional surveillance monitor jobs qualifies as a "very rare" number.

The statute in question indicates that the "significant number of jobs" can be *either* regional jobs (the region where a claimant resides) *or* in several regions of the country (national jobs). 42 U.S.C. §§ 423(d)(2)(A). The Commissioner argues that if substantial evidence supports finding *either* of the two numbers "significant," the ALJ's decision must be upheld. *Id*. The Commissioner, focusing not on the 135 regional jobs, but on the 1,680 jobs found nationally, argues that a "significant number" of jobs were available to Jennie Beltran at a national level.

If we find *either* of the two numbers "significant," then we must uphold the ALJ's decision.    42 U.S.C. § 423(d)(2)(A).  Having concluded that 135 regional jobs is not a "significant number," we turn to the 1,680 national jobs. However, we cannot consider the 1,680 jobs as a stand-alone figure; rather, as the statute states, we must consider this number in light of the fact that it represents jobs across "several regions." *Id.*  Although 1,680 jobs might seem a "significant number" standing alone, distributing these jobs between several regions across the nation shows that it is not "significant" after all.  If 135 jobs available in one of the largest regions in the country is not a "significant number," then 1,680 jobs distributed over *several* regions cannot be a "significant number," either.  We need not decide what the floor for a "significant number" of jobs is in order to reach this conclusion.

Furthermore, the district court's finding that there existed only 135 regional or 1,680 national surveillance system monitor jobs was solely based on a vocational expert's testimony. Upon questioning by Beltran's attorney, the same vocational expert admitted that there are not many of these jobs anymore. She further testified that she was not familiar with the tri-county area of Southern California (the area where Beltran resides) and that she was not aware of any available surveillance system monitor positions in that area. The vocational expert's testimony further indicates that the job of a surveillance system monitor was simply not available to Jennie Beltran.  As we found in *Walker*, a job that is rare or generally unavailable to the claimant due to her limitations cannot be held to exist in significant numbers. *See Walker*, 546 F.2d at 820.

Congress has determined under 42 U.S.C. § 423(d)(2) that what is essential is the existence of jobs. In deciding whether a significant number of jobs exist in a region or in several regions, an ALJ may not consider the hiring practices of employers or whether a claimant actually could obtain work if he or she applied. However, we must still consider Beltran's application for benefits in light of her own situation to determine her ability to perform the job of surveillance system monitor.

The ALJ established that Jennie Beltran could only stand and walk for two hours of the day, but not do prolonged walking; required an assistive device to walk; and could not walk frequently on uneven terrain. In her application for disability benefits, Beltran alleged that she was unable to take a shower without someone close by in case she were to fall. Beltran also alleged that she needed to rest frequently between washing dishes or preparing food because she suffered from back and foot pain. Even if Jennie Beltran were able to find an open position, it is highly unlikely that a woman with her physical and mental limitations—who was forty-nine years old and possessed only a high school degree—would be able to get to the job, let alone sufficiently perform as a surveillance system monitor. In *Walker*, we stated that "[i]n looking toward the pool of jobs existing in the national economy, Congress did not intend to foreclose a claimant from disability benefits on the basis of the existence of a few isolated jobs." *Walker*, 546 F.2d at 819. Considering all of her limitations, it would be unconscionable to expect Beltran to find even one of 135 jobs as a surveillance system monitor in her region or one of 1,680 jobs scattered across several regions. Doing so would achieve exactly what we attempted to avoid in *Walker*: foreclose a deserving claimant from

obtaining disability benefits on the basis of the existence of a few isolated jobs.

In sum, based on the rarity of the surveillance system monitor jobs, and considering Jennie Beltran's physical and mental limitations, we are compelled to find that the ALJ's decision is not supported by substantial evidence. *Benton*, 331 F.3d at 1035.

## CONCLUSION

We **REVERSE** the district court's grant of summary judgment to the Commissioner of Social Security and **REMAND** for further proceedings consistent with this opinion.

---

IKUTA, Circuit Judge, dissenting:

By usurping the ALJ's role as factfinder, the majority makes two critical mistakes. First, it improperly rejects the ALJ's conclusion that Beltran's physical limitations wouldn't prevent her from working. The majority forgets that Congress gave the ALJ, not the courts, the responsibility of determining "the most [Beltran] can still do despite [her] limitations," 20 C.F.R. § 404.1545(a)(1); *see also* § 404.1546(c). Second, the majority improperly rejects the ALJ's conclusion that a significant number of suitable jobs exist in the regional and national economy, a conclusion supported by substantial evidence. The majority replaces the substantial evidence standard with its own rule: the ALJ's conclusion cannot stand because the majority thinks it is "unconscionable." Maj. op. at 10. I cannot agree with either of these improper decisions.

**1**

The ALJ here quite reasonably determined that during the time period at issue, Beltran was capable of performing a limited range of unskilled, sedentary work. The ALJ correctly relied on the vocational expert's testimony regarding the number of jobs that Beltran was capable of performing despite her limitations. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also* 20 C.F.R. § 404.1566(e).

But the majority insists it can do a better job. Overriding the ALJ, the majority asserts that it would be "unconscionable" to expect Beltran to find one of the sedentary jobs identified by the vocational expert because "it is highly unlikely that a woman with her physical and mental limitations—who was forty-nine years old and possessed only a high school degree—would be able to get to the job, let alone sufficiently perform as a surveillance system monitor." Maj. op. at 10.

Every part of this conclusion is wrong. First, the majority has no business speculating as to whether Beltran would be able to get to the job or sufficiently perform at the job, because the ALJ properly included all of Beltran's mental and physical limitations—including the limitations on her mobility—in the hypothetical posed to the vocational expert. The majority fails to acknowledge that many of the limitations it attempts to highlight stem from Beltran's severe alcohol abuse, which cannot form the basis of a disability determination. *See* 20 C.F.R. § 404.1535(b) (requiring the ALJ to determine whether alcoholism is a contributing factor material to the claimed disability by considering only the limitations that would remain if the claimant stopped using

alcohol); *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (holding that benefits must be denied if the limitations that would remain if the claimant stopped using alcohol would not be disabling). We are required to affirm the ALJ's determination of Beltran's residual functional capacity so long as it is supported by substantial evidence, *see Bayliss*, 427 F.3d at 1217. The majority ignores this requirement.

Second, the question whether Beltran could find — or could be successful at — one of the jobs identified by the vocational expert is entirely irrelevant. In determining whether a claimant can perform work that exists in the national economy, a court cannot consider "whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A);[1] *see also Martinez*, 807 F.2d at 774–75

---

[1] 42 U.S.C. § 423(d)(2)(A) states in full:

An individual shall be determined to be under a disability *only if* his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, *regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work*. For purposes of the preceding sentence (with

("Congress has explicitly determined that it is the *existence* of jobs that is essential, and that an administrative law judge is *not* required to consider the hiring practices of employers, or whether a claimant could actually obtain work if he applied for it."). Because Beltran's ability to find one of the jobs identified by the vocational expert is not material under the statutory scheme, the majority errs in giving any weight to its

---

respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(emphasis added); *see also* 20 C.F.R. § 404.1566(c):

Inability to obtain work. We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of—

(1) Your inability to get work;

(2) Lack of work in your local area;

(3) The hiring practices of employers;

(4) Technological changes in the industry in which you have worked;

(5) Cyclical economic conditions;

(6) No job openings for you;

(7) You would not actually be hired to do work you could otherwise do;

(8) You do not wish to do a particular type of work.

speculation that Beltran would be unable to actually find one of the surveillance system monitor jobs. Maj. op. at 10.

**2**

Because of its cavalier attitude towards the ALJ's factfinding, the majority succumbs to an even more damaging error: It improperly decides to override the ALJ's determination that the existence of 135 jobs in the regional economy and 1,680 jobs in the national economy does not meet the statutory requirement that there be "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). In making this error, the majority fails to give the deference required by regulation and our precedent to the adjudicative determination of the ALJ regarding this essentially factual finding.[2] *Barker*, 882 F.2d at 1480 ("[W]hether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact *to be determined by a judicial officer*." (quoting *Martinez*, 807 F.2d at 775)). Instead, the majority makes the unsupported proclamation that 135 jobs in the region where Beltran lives and 1,680 jobs in the national economy are not "significant" numbers for purposes of the statute.

---

[2] The majority misconstrues the record in concluding that the vocational expert qualified her statement as to the number of jobs available in the national economy. The expert's impressionistic comments about the general decline in surveillance system monitor jobs and her own personal degree of familiarity with the tri-county area of southern California in no way modified her unequivocal conclusion that there were 135 jobs in the regional economy and 1,680 jobs in the national economy that Beltran was capable of performing.

The majority's holding is unsupported by any precedent. We have reversed an ALJ's determination on the "significant number of jobs" issue in exactly one case, *Walker v. Mathews*, where the record revealed that there were only "a few scattered jobs" in the nation the claimant was capable of performing. 546 F.2d 814, 820 (9th Cir. 1976).[3] *Walker* correctly concluded that a vocational expert's report that there are only "a few scattered jobs" does not constitute substantial evidence of a "significant number" of jobs existing in the economy. *Id.* But 135 jobs in the regional economy and 1,680 jobs are not "a few scattered jobs." Rather than *Walker*, the controlling precedent here is *Barker*, which held that 1,266 regional jobs constituted a significant number because it fell "within the parameters of 'significant numbers' found" by other courts. *Barker*, 882 F.2d at 1479. In defining these parameters, we relied in part on a district court case holding that the 125 to 240 tune-up mechanic positions the claimant was capable of performing "constitute[d] a 'significant' number as that term is used in the Secretary's regulations." *Uravitch v. Heckler*, No. CIV-84-1619-PHX-PGR, 1986 WL 83443, at \*1 (D. Ariz. May 2, 1986); *Barker*, 882 F.2d at 1478–79 (relying on *Uravitch*). It necessarily follows that 135 jobs in the regional economy is also a significant number of jobs, as it is greater than the lower parameter set by this court in *Barker*. *Barker*, 882 F.2d at 1478–79.

We must uphold the ALJ's decision if it is supported by substantial evidence, which "is a highly deferential standard of review." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d

---

[3] Each of the other cases cited by the majority merely affirmed as a matter of course the ALJ's factual determination that the number of jobs identified by the vocational expert was significant.

685, 690 (9th Cir. 2009). Here, the ALJ's determination that the number of jobs identified by the vocational expert was significant is supported by substantial evidence, and consistent with our precedent. By holding otherwise, the majority not only elbows the ALJ out of her proper role, but also turns its back on the decisions of other circuits. *See, e.g.*, *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (noting that "[a]s few as 174 jobs has been held to be significant" (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987))); *Johnson v. Chater*, 108 F.3d 178, 180 & n.3 (8th Cir. 1997) (holding that 200 jobs in the state was a significant number); *Scott v. Shalala*, 43 F.3d 1483 (10th Cir. Dec. 21, 1994) (unpublished table decision) (holding that 195 jobs in the state was a significant number); *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (holding that the existence of 200 jobs in the regional economy was a "clear indication" that other substantial gainful work existed in the national economy).

**3**

In reviewing an administrative agency's decision we must take care to stay within the role assigned by Congress. The majority here exceeded its authority in deciding "the most [Beltran] can still do despite [her] limitations," 20 C.F.R. § 404.1545(a)(1), and in deciding that 1,680 jobs in the national economy is not "significant." Because the majority should defer to the ALJ's clearly reasonable conclusions rather than tossing them out to ensure that its view of Beltran's abilities prevails, I respectfully dissent.