**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CARLOS GUTIERREZ,
*Plaintiff-Appellant*,

v.

COMMISSIONER OF SOCIAL
SECURITY,
*Defendant-Appellee.*

No. 12-15472

D.C. No.
1:11-cv-00105-
DLB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Dennis L. Beck, Magistrate Judge, Presiding

Argued and Submitted
December 6, 2013—San Francisco, California

Filed January 23, 2014

Before: Stephen S. Trott and Mary H. Murguia, Circuit
Judges, and David A. Ezra, District Judge.[*]

Opinion by Judge Trott

---

[*] The Honorable David A. Ezra, District Judge for the U.S. District
Court for the Western District of Texas, sitting by designation.

**SUMMARY**[**]

### Social Security

The panel affirmed the district court's decision affirming the Commissioner of Social Security's denial of claimant's application for supplemental security income under the Social Security Act.

The Administrative Law Judge ("ALJ") conducted the five-step sequential evaluation process described in 20 C.F.R. § 416.920 and concluded at step five that the claimant did not suffer from a disability because he could perform a significant number of jobs in the national economy. The panel held that the ALJ did not err by defining "region" for purposes of 42 U.S.C. § 1382c(a)(3)(B) as the State of California, and 2,500 jobs in California constituted a significant number of jobs in the region. The panel also held that substantial evidence supported the ALJ's decision that 25,000 national jobs constituted "work which exist[ed] in significant numbers . . . in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Lawrence Rohlfing (argued), Santa Fe Springs, California, for Plaintiff-Appellant.

Elizabeth Firer (argued), Special Assistant United States Attorney; Benjamin B. Wagner, United States Attorney; Donna L. Calvert, Acting Regional Chief Counsel, San Francisco, California, for Defendant-Appellee.

**OPINION**

TROTT, Circuit Judge:

**OVERVIEW**

Carlos Gutierrez filed claims for supplemental security income ("SSI"). The Commissioner denied the claims by initial determination, and Gutierrez requested a de novo hearing by an Administrative Law Judge ("ALJ"). The ALJ conducted the five-step sequential evaluation process described in 20 C.F.R. § 416.920 and concluded at the fifth step that Gutierrez did not suffer from a disability because he could perform a significant number of jobs in the national economy. The ALJ found that despite Gutierrez's residual functional capacity, age, education, and work experience, he could make the vocational adjustment to other work as an assembler (1,500 jobs in the State of California and 15,000 jobs in the nation) or as an almond blancher (1,000 jobs in the State of California and 10,000 jobs in the nation). The district court denied his appeal from the Commissioner's final decision.

Gutierrez raises one issue on appeal: whether the ALJ failed to make an adequate showing that a significant number of jobs existed in the region in which Gutierrez lived or in several regions of the country. This issue in turn requires us to grapple with the meaning in the controlling statute of the term "region," which the Commissioner has not yet formally defined.

We have jurisdiction over this timely appeal pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Carlos Gutierrez ("Gutierrez"), who lives in Bakersfield, California, filed claims in 2005 and 2006 for SSI under Title XVI of the Social Security Act, asserting that he had been disabled since September 1, 2000, due to his various recognized medical and mental conditions.

The Social Security Commissioner denied Gutierrez's claims, concluding that although Gutierrez may not have been able to perform his past work, based on his age, education, and past work experience, he could still do other physically less demanding work. Thus, Gutierrez's condition was not severe enough to prohibit him from working.

On April 5, 2007, Gutierrez requested reconsideration of the Commissioner's decision, which was denied.

Gutierrez requested a de novo hearing before an ALJ on August 15, 2007. The ALJ used the familiar five-step sequential evaluation process outlined in 20 C.F.R. § 416.920 to determine whether Gutierrez suffered from a "disability"

under the Social Security Act. Gutierrez passed the initial four steps, but his claim foundered on step five.

After considering Gutierrez's age, education, work experience, and residual functional capacity, the ALJ concluded that jobs existed in significant numbers in the national economy which Gutierrez could perform. Relying on the vocational expert's ("VE") testimony at the hearing on November 5, 2009, the ALJ found that Gutierrez could work as an assembler, as there were 1,500 jobs available in California and 15,000 such jobs available nationally. The ALJ also found that Gutierrez could work as an almond blancher, because there were 1,000 jobs available in California and 10,000 such jobs available nationally. Thus, because Gutierrez could perform 2,500 jobs in California and 25,000 jobs in the nation, the ALJ concluded that Gutierrez did not suffer from a disability under the Social Security Act.

The Appeals Council denied Gutierrez's request for review. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security.

Gutierrez brought a civil action in the Eastern District of California. The district court determined that the ALJ's decision was supported by substantial evidence and was based on proper legal standards. *Gutierrez v. Astrue*, No. 1:11-cv-0105-DLB, 2012 WL 259141, at *6 (E.D. Cal. Jan. 26, 2012).

First, the court addressed Gutierrez's primary argument that the ALJ had erred at step five by failing to demonstrate that Gutierrez could perform "substantial gainful work which exist[ed] in the national economy." Gutierrez asserted that even though 42 U.S.C. § 1382c(a)(3)(B) defined "work which

exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country," the ALJ erred by considering the State of California to be a "region" for purposes of § 1382c(a)(3)(B).

In rejecting Gutierrez's argument, the court relied on *De La Cruz v. Astrue*, No. 1:08-cv-0782-DLB, 2009 WL 1530157, at *10–11 (E.D. Cal. May 28, 2009), where the same court had previously rejected similar arguments. *Gutierrez*, 2012 WL 259141, at *4–5. In *De La Cruz*, the court held that 2,756 jobs in California was sufficient for purposes of § 1382c(a)(3)(B). 2009 WL 1530157, at *10–11. The court in *De La Cruz* looked to *Barrett v. Barnhart*, 368 F.3d 691, 692 (7th Cir. 2004) (per curiam), in which the Seventh Circuit had acknowledged that "vocational experts who testify . . . concerning availability of jobs that the applicant has the physical ability to perform almost always confine their testimony to indicating the number of such jobs that exist in the applicant's state, or an even smaller area." *Id.* at *10 (quoting *Barrett*, 368 F.3d at 692). After recounting the reasoning in *De La Cruz*, the district court held that 2,500 positions across California constituted work that existed in significant numbers in the region where Gutierrez lived.

Second, the court addressed Gutierrez's contention that the court should adopt the geographical delineations provided by the Metropolitan and Micropolitan Statistical Areas to define "region." According to the Office of Management and Budget, a Metropolitan and Micropolitan Statistical Areas is "an area containing a recognized population nucleus and adjacent communities that have a high degree of integration with that nucleus." Standards for Defining Metropolitan and

Micropolitan Statistical Areas, 65 Fed. Reg. 82228-01 (Dec. 27, 2000).

In rejecting this argument, the court held that the Social Security Act and the Social Security Commissioner's Regulations adequately defined "region."  The court explained that 20 C.F.R. § 416.966(a)(1) specifies that "it does not matter whether work exists in the immediate area" where a claimant lives, but that 20 C.F.R. § 416.966(b), on the other hand, provides that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant lives] are not considered work which exists in the national economy."  Because the court found that the statute and regulation provided sufficient direction to define "region," the court declined to define "region" as one of the Metropolitan and Micropolitan Statistical Areas.  As such, the court found that the State of California was a "region" under § 1382c(a)(3)(B) and that, therefore, the ALJ had not erred.

## STANDARD OF REVIEW

The court reviews a district court's judgment upholding an ALJ's denial of social security benefits de novo.  *See Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). However, the court reviews an ALJ's factual findings for substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).  The court must consider the record as a whole and weigh "both the evidence that supports and the evidence that detracts from

the ALJ's" factual conclusions. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996).

Nevertheless, a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *see also Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (requiring that a Commissioner's decision be free of "legal error").

## DISCUSSION[1]

Under the Social Security Act, a claimant is considered "disabled" if he is "unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). However, that statutory definition of disability is qualified as follows:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such

---

[1] We decline to adopt both parties' suggestion that *Chevron* deference applies to this issue. *Robinson Fruit Ranch, Inc. v. United States*, 147 F.3d 798, 802 (9th Cir. 1998) (declining to give deference to the ALJ's interpretation of the statute under *Chevron* because there was no consistent agency interpretation of the statute).

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of *substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work*.

*Id.* § 1382c(a)(3)(B) (emphasis added).  That same section defines "in the national economy":

For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means *work which exists in significant numbers either in the region where such individual lives or in several regions of the country*.

*Id.* (emphasis added).   The accompanying regulations reiterate that "work exists in the national economy when it exists in significant numbers either in the region where [the individual lives] or in several other regions of the country." 20 C.F.R. § 416.966(a).

1.  **The ALJ did not err by defining "region" for purposes of § 1382c(a)(3)(B) as the State of California, and 2,500 jobs in California constitutes a significant number of jobs in the region.**

Section 1382c(a)(3)(B) defines, "work in the national economy" in the disjunctive. In *Beltran v. Astrue*, this court noted that

> [t]he statute in question indicates that the "significant number of jobs" can be *either* regional jobs (the region where a claimant resides) *or* in several regions of the country (national jobs). . . .
>
> If we find *either* of the two numbers "significant," then we must uphold the ALJ's decision.

700 F.3d 386, 389–90 (9th Cir. 2012). Gutierrez argues (1) that the ALJ erred in the first part of this disjunctive test by equating the State of California with "the region where such individual lives," and (2) that the ALJ erred by finding that 2,500 jobs qualifies as a significant number.

### A. The Metropolitan or Micropolitan Statistical Areas as a definition of "region."

Gutierrez contends that we must interpret "the region where such individual lives" according to the Metropolitan or Micropolitan Statistical Areas ("MMSAs") delineated by the Office of Management and Budget ("OMB") for use by the United States Census Bureau. *See* Appendix 1.

MMSAs are defined by population: "A metro area contains a core urban area of 50,000 or more population, and a micro area contains an urban core of at least 10,000 (but less than 50,000) population." United States Census Bureau, *Metropolitan and Micropolitan Statistical Areas Main*, http://www.census.gov/population/metro. Each metro or micro area "includes the counties containing the core urban area, as well as any adjacent counties that have a high degree of social and economic integration (as measured by commuting to work) with the urban core." *Id.* The OMB establishes and maintains the delineations of the MMSAs "solely for statistical purposes." Office of Mgmt. & Budget, Exec. Office of the President, OMB Bulletin No. 13-01, Revised Delineations of Metropolitan Statistical Areas, Micropolitan Statistical Areas, and Combined Statistical Areas, and Guidance on Uses of the Delineations of Those Areas at 3 (2013), *available at* http://www.whitehouse.gov/sites/default/files/omb/bulletins/2013/b-13-01.pdf. The classification of the MMSAs is "intended to produce nationally consistent delineations for collecting, tabulating, and publishing Federal statistics for a set of geographic areas." *Id.*

Gutierrez asks us to find that Bakersfield-Delano, one of California's twenty-six metropolitan statistical areas with a population of 839,000, qualifies as his "region" for purposes of § 1382c(a)(3)(B). At first blush, Gutierrez's proposal may seem fitting, given that the regulations provide:

> When [the Commissioner] determine[s] that unskilled, sedentary, light, and medium jobs exist in the national economy (in significant numbers either in the region where [a claimant] live[s] or in several regions of the

> country), [the Commissioner] will take administrative notice of reliable job information from various governmental and other publications. . . . [including] Census Reports, also published by the Bureau of the Census.

20 C.F.R. § 416.966(d)(3).

However, Gutierrez's proposed definition of "region" suffers from two irremediable flaws. First, the MMSAs do not account for many areas around the country. The Deputy Director of Management for the OMB acknowledged that the MMSAs do not account for 1,335 counties in the United States. Office of Mgmt. & Budget, Exec. Office of the President, *supra*, at 6 ("Of 3,143 counties in the United States, 1,167 will be in the 381 metropolitan statistical areas in the United States, and 641 counties will be in the 536 micropolitan statistical areas (1,335 counties are outside the classification)."). Moreover, the "general concept of a Metropolitan Statistical Area or a Micropolitan Statistical Area is that of an area containing a recognized population nucleus and adjacent communities that have a *high degree of integration with that nucleus*." Standards for Defining Metropolitan and Micropolitan Statistical Areas, 65 Fed. Reg. 82228-01, 82229 (proposed Dec. 27, 2000) (emphasis added). Because the MMSAs do not account for areas without a high degree of integration with a recognized population nucleus, superimposing the MMSAs onto the concept of "region" under § 1382c(a)(3)(B) could distort future disability benefit claims for claimants who do not live within the OMB's circumscribed metropolitan or micropolitan areas.

Second, the OMB Deputy Director also explicitly cautioned that the MMSA delineations "should not be used to develop and implement [f]ederal, state, and local nonstatistical programs and policies without full consideration of the effects of using these delineations for such purposes." Office of Mgmt. & Budget, Exec. Office of the President, *supra*, at 3. The Deputy Director added that "[t]hese areas *should not serve as a general-purpose geographic framework* for nonstatistical activities . . . ." *Id.* (emphasis added). The task of fully considering the effects of the MMSAs for a nonstatistical program like that of the Social Security Administration should fall to Congress – not to this court.

Accordingly, because the MMSAs do not account for many areas within the country and are not appropriate for nonstatistical programs like the Social Security Administration, we reject Gutierrez's proposed definition of "region" as one of the MMSAs.

### B.  "Region" does not mean "immediate area."

Gutierrez next asserts that the statutory reference to the region where a claimant lives means in the immediate area in which he resides. Gutierrez also argues that the identification of a region for the purposes of work activity must be limited by "a reasonable commuting distance" because "[i]t would constitute an unreasonable expectation that Mr. Gutierrez would drive from Bakersfield to San Francisco for an unskilled job that pays minimum wage." In determining what would be a "reasonable commuting distance," Gutierrez would have the Commissioner consider how much an applicant would be paid once he arrived at the job site, and presumably also the cost of commuting.

In support of his "immediate area" argument, which is not without some superficial appeal, Gutierrez quotes 20 C.F.R. § 416.966(a)(1), selectively focusing on the word "immediate" in an explanatory parenthetical in his brief which reads: "'It does not matter whether –' 'Work exists in the immediate area in which you live.'" However, the entirety of 20 C.F.R. § 416.966(a) states:

> § 416.966 Work which exists in the national economy.
>
> > (a) General. We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. *It does not matter whether –*
> >
> > > (1) *Work exists in the immediate area in which you live*;
> > >
> > > (2) A specific job vacancy exists for you; or
> > >
> > > (3) You would be hired if you applied for work.

20 C.F.R. § 416.966(a) (emphases added). As the language of § 416.966(a)(1) thus demonstrates, the term "region" is not equivalent to a claimant's immediate area. "Region" is not synonymous with "immediate area."

Likewise, 20 C.F.R. § 416.966(c) reiterates that whether work exists in the claimant's "local area" is irrelevant for

purposes of determining whether work exists in the national economy.  That section reads:

> (c) Inability to obtain work.  We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of –
>
> (1) Your inability to get work;
>
> (2) *Lack of work in your local area*;
>
> (3) The hiring practices of employers;
>
> (4) Technological changes in the industry in which you have worked;
>
> (5) Cyclical economic conditions;
>
> (6) No job openings for you;
>
> (7) You would not actually be hired to do work you could otherwise do, or;
>
> (8) You do not wish to do a particular type of work.

20 C.F.R. § 416.966(c) (emphasis added).  Again, the regulations flowing from the statute are clear that "region" is not limited by statute or by regulations to the local or immediate area of the claimant.

Furthermore, we have held that the relevant job area for purposes of the statutory definition of "disability" need not be the claimant's local area. *See Torske v. Richardson*, 484 F.2d 59, 60 (9th Cir. 1973) (per curiam). In *Torske*, the district court had held that the inclusion of the Portland area (70 miles away from the claimant's home) as a labor market available to the claimant was unreasonable. *Id.* Although we did not define "region," we rejected the district court's holding, explaining that "the job area is not confined to the claimant's locality." *Id.* Other courts agree. *See, e.g.*, *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (holding that the relevant "region" for purposes of the Social Security Act is not limited to a claimant's local area); *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) ("The Commissioner is not required to show that job opportunities exist within the local area."). If Gutierrez's argument were accepted, the Secretary could virtually never carry his burden when a claimant lives in a sparsely populated rural area. Such a claimant could always argue, regardless of the absolute number of jobs found by the vocational expert, that the vast majority of jobs exist in the metropolitan centers and are unavailable to remote rural dwellers. Such a rule might well lead to the equivalent of "forum shopping" by claimants.

In sum, the regulations and our holding in *Torske* preclude Gutierrez's facially appealing argument that "region" should be equated with his local area or an area within a reasonable commuting distance.

### C.  "Region" may include an entire state.

Gutierrez next argues that the ALJ erred in this case by deeming the State of California to be the relevant "region" under § 1382c(a)(3)(B). He says, "Region does not mean a

state that is 770 miles north to south and 250 miles east to west." Like most of his contentions, this, too, has some facial appeal, but it fails under statutory scrutiny.

Courts have used a claimant's state as a proxy for "region" under § 1382c(a)(3)(B). In *Pollice v. Sec'y of Health & Human Servs.*, No. 87-1609, 1988 WL 28536, at *1 (6th Cir. April 1, 1988), the Sixth Circuit expressly held that an entire state can constitute a "region." The court explained:

> We believe it is clear that the term "region" is flexible and that the Secretary did not err in considering the number of jobs existing in the entire State of Michigan. . . . The fact that the statute speaks in terms of work existing in the national economy and does not restrict the Secretary to consideration of work that exists in the immediate area of a claimant's residence *gives the Secretary sufficient latitude to treat an entire state as the region to be considered.*

*Id.* (emphasis added). As such, the Sixth Circuit upheld the Secretary's finding that 3,600 jobs in the entire state of Michigan was a significant number of jobs in the region. *Id.*

Other courts have upheld an ALJ's finding that the relevant region was a claimant's state. *See, e.g.*, *Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995) (Iowa); *Trimiar v. Sullivan*, 966 F.2d at 1326, 1330–32 (10th Cir. 1992) (Oklahoma).

We have upheld an ALJ's finding that the relevant region was a claimant's state. We found that substantial evidence

supported the ALJ's finding that the claimant was not disabled because the vocational expert testified that she "could perform one of 622,000 jobs in the national economy and 1,300 jobs *in Oregon*." *Thomas v. Barnhart*, 278 F.3d 947, 960–61 (9th Cir. 2002) (emphasis added).

We discern no principled difference between decisions upholding state-wide job numbers and decisions upholding job numbers for areas within a state. Rather, any difference can be attributed to the vocational expert's testimony. As the Seventh Circuit commented:

> [I]n our experience, and, it seems, in that of the other circuits as well, the vocational experts who testify in social security disability cases concerning the availability of jobs that the applicant has the physical ability to perform almost always confine their testimony to indicating the number of such jobs that exist *in the applicant's state, or an even smaller area*.

*Barrett*, 368 F.3d at 692.

Here, we note that Gutierrez did not challenge the VE's testimony regarding the number of jobs available to him in California. Moreover, he did not explore with the VE where those jobs were in relation to his domicile in Bakersfield. Thus, as the district court observed, "there is nothing here to suggest that the positions of assembler and almond blancher, especially where Plaintiff resides within the agricultural San Joaquin Valley, were 'isolated jobs that existed only in very limited numbers in relatively few locations' outside of the region in which plaintiff resides."

In summary, we conclude on this record that the State of California qualifies as a "region" for purposes of § 1382c(a)(3)(B). As such, the ALJ in the instant case had "sufficient latitude to treat an entire state as the region to be considered," *Pollice*, 1988 WL 28536, at *1, and thus did not commit legal error.

In effect, Gutierrez asks us to re-write the Social Security Act and the Commissioner's implementing regulations. We decline the invitation. *See Sorenson v. Weinberger*, 514 F.2d 1112, 1118–19 (9th Cir. 1975) (explaining that the courts cannot rewrite definitions laid down by Congress).

### D. 2,500 jobs constitute a significant amount of work in the region of California.

After defining the relevant region for purposes of § 1382c(a)(3)(B), we next consider whether 2,500 jobs in California constitutes "significant work."

Our precedent defers to an ALJ's supported finding that a particular number of jobs in the claimant's region was significant. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (holding that a reviewing court must uphold the ALJ's decision if it is supported by "substantial evidence," which "is a highly deferential standard of review"); *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986) ("[W]hether there [is] a significant number of jobs a claimant is able to perform with his limitations is a question of fact *to be determined by a judicial officer*." (emphasis added)).

Moreover, we have never set out a bright-line rule for what constitutes a "significant number" of jobs.

Nevertheless, we have upheld a number of jobs less than 2,500 in a handful of cases, and in those cases, the regions were smaller than the State of California. *See Thomas*, 278 F.3d at 960 (upholding the ALJ's finding that 1,300 jobs in Oregon constituted significant work); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir.1999) (1,000 to 1,500 jobs in the local area alone was significant); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (per curiam) (2,300 jobs in San Diego County was significant).

However, in *Barker*, we relied on decisions from district courts within this circuit finding several hundred jobs "significant." *See* 882 F.2d at 1478–79. *Barker* also relied on decisions from other circuits. *See id.* at 1478 (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (finding that 1,350 jobs in the local economy constituted a significant number); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (holding that as few as 500 jobs "in the region in which Jenkins live[d]" was a significant number)).

Looking for guidance to decisions from our sister circuit courts, we conclude that a sampling of what constitutes "significant work" reveals that the ALJ's finding of 2,500 jobs in California satisfies the statutory standard. *See, e.g.*, *Johnson v. Chater*, 108 F.3d 178, 180–81 (8th Cir. 1997) (upholding the ALJ's finding that 200 jobs in Iowa constituted significant work); *Trimiar*, 966 F.2d at 1330–32 (650 to 900 jobs in Oklahoma constituted significant work); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (1,600 jobs statewide in Georgia was significant).

Thus, we affirm the ALJ's decision that 2,500 jobs constituted significant work in the region of California.

## 2.   A significant number of jobs existed in several regions of the country

As explained above, "work which exists in the national economy" can be satisfied by "work which exists in significant numbers *either* in the region where such individual lives *or* in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B) (emphasis added); *Beltran*, 700 F.3d at 389–90.  As such, even if we were to conclude that California is not the relevant "region" or that 2,500 jobs is not "work which exists in significant numbers," we must then consider whether substantial evidence supports the ALJ's decision that 25,000 national jobs constituted "work which exist[ed] in significant numbers . . . in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B); *see also Allen*, 816 F.2d at 602 (holding that even if credible evidence indicated a lack of a significant number of jobs in a particular geographic area, a "failure to disprove the existence of . . . jobs on a national scale would leave the ALJ's [step-five] finding intact").

The ALJ found that 25,000 national jobs constituted "work which exists in significant numbers . . . in several regions of the country."   Assuming without deciding that Gutierrez properly has raised an issue regarding this finding, we affirm the ALJ's decision, because 25,000 jobs meets the statutory standard.

We assess the 25,000 nationwide figure in the context of "several regions of the country."  *See Beltran*, 700 F.3d at 390 (holding that the national job figure cannot stand alone and must be considered in light of the fact that it represents jobs in *several* regions).  At the same time, we also assess whether the national jobs are significant in light of 20 C.F.R. § 416.966(b), which states that "[i]solated jobs that exist only

in very limited numbers in relatively few locations outside of the region where [a claimant] live[s] are not considered work which exists in the national economy."

Under our current case law, the ALJ's finding that 25,000 national jobs is sufficient presents a close call. *See Moncada*, 60 F.3d at 524 (64,000 nationwide jobs significant); *Thomas*, 278 F.3d at 960 (622,000 nationwide jobs significant); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (125,000 nationwide jobs significant); *see also Beltran*, 700 F.3d at 390 (1,680 nationwide jobs insignificant). Nevertheless, while these decisions involved higher numbers of nationwide jobs, none precluded the possibility that 25,000 jobs constitutes a significant number. And one other circuit court has found fewer than 25,000 national jobs to be significant. *See Johnson*, 108 F.3d at 180 (10,000 national jobs significant).

As 20 C.F.R. § 416.996(b) explains, "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s] are not considered work which exists in the national economy." A finding of 25,000 jobs likely does not fall into the category of "isolated jobs" existing in "very limited numbers." Accordingly, the ALJ's national job finding satisfies § 1382c(a)(3)(B), because it represents a significant number of jobs in several regions of the country.

## CONCLUSION

The ALJ did not err in concluding that 2,500 jobs in the State of California constituted a significant number of jobs in the region where Gutierrez lived and that 25,000 jobs also

signifies a significant number of jobs in several regions of the country.

## CODA

We can conceive of a factual record which might demonstrate that using an entire state as large as California as a "region" – or for that matter Alaska or Montana – would be problematic. For example, if a claimant lived in Weed, California, and the only available jobs in question were some 700 miles away in San Diego, California, one would not reasonably expect a claimant with severe enough impairments to get to step 5 either to commute or to relocate. It is possible that the Social Security Administration's current definition of "region" would permit such a potentially unreasonable result. However, that is not the case here. Moreover, policy decisions such as those implicated by Gutierrez's arguments are best addressed to Congress and the Social Security Administration, not to us.

**AFFIRMED.**

Appendix 1



*Maps of Metropolitan and Micropolitan Statistical Areas*, United States Census Bureau (February 2013), http://www.census.gov/population/metro/files/ metro_micro_Feb2013.pdf